L. K. RILEY, *Petitioner,* v. REX SWEAT, as Sheriff of Duval County, Florida, *Respondent.*

149 So. 48.

En Banc.

Opinion filed May 31, 1933.

*Hall & Rush,* for Petitioner;

*Cary D. Landis, Attorney General,* and *H. E. Carter, Assistant,* for Respondent.

DAVIS, C. J.—This is an original habeas corpus proceeding brought by the petitioner Riley to secure his release from custody under a criminal charge brought against him under Chapter 14889, Acts of 1931, Laws of Florida, commonly known as the "1931 Securities Act."

The record before us shows that petitioner was arrested on a warrant charging him with having engaged in and conducted the business of a dealer in securities in Duval County, Florida, without having been registered as a dealer in the office of the Florida Securities Commission as required by the aforesaid Act. Upon a preliminary hearing before

364

a Justice of the Peace, it appeared that petitioner's occupation had for sixteen years been that of a security dealer in the City of Jacksonville; that he was in no wise suspected or accused of having attempted any fraud or misrepresentation in connection with his business, and that in an effort to comply with the terms of Section 11 of Chapter 14899, *supra,* requiring a five-thousand-dollar bond as a condition precedent for registration as a security dealer, petitioner had unsuccessfully made repeated attempts to induce surety companies to write such a bond for him as the statute requires, but that such surety companies had refused so to do because of the vagueness and uncertainty of the liability contemplated by the bond the statute provides shall be furnished.

From the order remanding petitioner to custody under the charge laid in the affidavit, relief from imprisonment has been sought on the ground that, as applied to the petitioner and his particular business, the requirements of Section 11 of the Act for his registration are unconstitutional and void.

Section 11 of said Chapter 14899, Acts of 1931, is to the effect that no dealer or salesman shall engage in business in this State as such dealer or salesman of securities, or sell any securities, including securities exempted in Section 4 of the Act, except in transactions exempt under Section 5 of the Act, unless he has been first registered by the Florida Securities Commission pursuant to the provisions of said Section. For any violation of the law in the foregoing particulars the violator is, under Section 17 of the Act, subject to a criminal penalty of not more than one thousand dollars fine, or two years imprisonment, or both such fine and imprisonment.

It is conceded on the record that petitioner has engaged in the business of a security dealer without having been

registered with the Florida Securities Commission as required by Section 11. It is likewise conceded that petitioner's failure to procure such registration has been due entirely to the refusal of the Florida Securities Commission to register him. This, the record shows, has been based on the ground that petitioner has not furnished the penal bond of five thousand dollars required by Section 11.

Such requirement as to bond, as stated in Section 11 of the Act, is as follows:

"If the Commission shall find that the applicant is of good character and has complied with the provisions of this Section including the payment of the fee hereinafter provided, he shall register such applicant as a dealer upon his filing bond in the sum of Five Thousand Dollars running to the Governor of the State of Florida conditioned upon the faithful compliance with the provisions of this Act by said dealer and by all salesmen registered by him while acting for him. Such bond shall be executed as surety by a surety company authorized to do business in this State."

"Liberty" as that word is used in the Fourteenth Amendment to the Constitution of the United States, means more than mere freedom from servitude. "Liberty" as protected by the Fourteenth Amendment to the United States Constitution means not alone the right of the citizen to be free from unauthorized physical restraint of his person. It means that he must be free in the enjoyment of all of his faculties; to be unhindered in the use of them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to freely pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned, subject only to those valid restraints on individual action which may be exacted under the police power of the State.

Smith v. State of Texas, 233 U. S. 630, 34 Sup. Ct. Rep. 681, 58 L. Ed. 1129; Williams v. Fears, 179 U. S. 270, 21 Sup Ct. Rep. 128, 45 L. Ed. 186; Allegyer v. State of Louisiana, 165 U. S. 578, 17 Sup. Ct. Rep. 427, 41 L. Ed. 832.

But the power of the State in providing for the general welfare of its inhabitants, authorizes its legislative power to be exercised in making and enforcing regulations which in its judgment are necessary and appropriate to secure the people against the consequences alike of ignorance and incapacity, as well as deception and fraud, in the pursuit of an otherwise admittedly proper and lawful calling, business or profession. Dent v. State of West Virginia, 129 U. S. 114, 9 Sup. Ct. Rep. 231, 32 L. Ed. 623. Yet it is well settled that under the Fourteenth Amendment to the Constitution of the United States the guaranty of "liberty" therein set forth precludes the direct, or indirect, forbidding by the State of the citizen's inherent right to engage in a useful and legitimate business, even though such business itself be subject to reasonable statutory regulations of an appropriate nature enacted under the police power. Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. Rep. 662, 61 L. Ed. 1336.

That the business or calling of security dealers of the kind undertaken to be regulated by Chapter 14889, Acts of 1931, is a legitimate and useful business, which cannot under either the State or Federal Constitution be entirely forbidden by statutory law to be carried on by a citizen in the enjoyment of his "liberty" under the Fourteenth Amendment to the Federal Constitution, can scarcely be denied.

So we pass to a consideration of the constitutionality of the bond requirement of Section 11 of the Act as applied to the particular dealer now before the Court, in order to determine whether such requirement as it actually operates,

is an unconstitutional restriction on petitioner's right to continue in his business as a security dealer.

Not only does Section 11 of the Act require dealers and salesmen of securities to apply for *registration* with the Florida Securities Commission as a condition precedent to the continued pursuit of their ordinary avocations as such dealers and salesmen, but it attaches to the granting of registrations certain precedent terms and conditions, without which registration under the Act is required by law to be refused by the State agency vested with administration of Chapter 14899.

Registration was refused in the case now before us on the ground that the applicant had not furnished a bond in the sum of five thousand dollars, conditioned upon his faithful compliance with the provisions of the Act, not only by the dealer himself but by all salesmen registered by him while acting for him. The bond required cannot be accepted by the Securities Commission unless it is executed as surety, by a surety company authorized to do business in this State.

That dealers in corporate and other forms of securities may under the police power of the State, be required to apply for and procure special licenses to do business before engaging in such occupations, and that the State may in the exercise of its police power, require that applicants for licenses first demonstrate to a State agency that they are of good repute and qualified to engage in such business and intend to engage in such a legitimate way, before licenses or registrations are granted to dealers, is not to be denied. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. Rep. 217, 61 L. Ed. 480; Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 Sup. Ct. Rep. 227, 61 L. Ed. 498; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 Sup. Ct. Rep. 224, 61 L. Ed. 493.

Therefore insofar as Chapter 14899, *supra,* provides that applications for registration shall be in such form as the Commission shall prescribe, and shall be duly verified under oath, etc., and shall embrace such additional information as to applicant's previous history, record and association, as may be deemed necessary to establish the good repute in business of the applicant, the present Act is well within the scope of permissible exercise of the police power and entirely consistent with constitutional liberty of conduct as guaranteed by the Fourteenth Amendment.

And the same conclusion may be stated with respect to the statutory requirement that each application shall be accompanied by the applicant's irrevocable written consent to the service of process upon the Commission in actions brought against the dealer growing out of his conduct of his business under the registration applied for. State of Washington ex rel. Bond & Tucker, Inc. v. Superior Court, decided by the United States Supreme Court May 8, 1933, U. S. Daily Journal, Vol. 1, No. 9, index page 190, and cases cited therein.

But where a literal application of the provisions of a statute setting up conditions precedent required to be observed in order to do business at all, result in what is practically an absolute prohibition of the business altogether, because of a substantial impossibility created by the statute making an applicant incapable of meeting the terms of the law as it actually operates, the statute must be dealt with under the Fourteenth Amendment, as if it were prohibitory in express terms, and if found to be so in operation though not in terms, it must be declared to be an unconstitutional infringement of the citizen's inherent right of liberty to engage in and carry on his lawful business, where the business affected is not subject to being entirely forbidden to be

engaged in. Yu Cong Eng v. Trinidad, 271 U. S. 500, 46
Sup. Ct. Rep. 619, 70 L. Ed. 1059.

In the case just cited, the Supreme Court of the United
States struck down a Territorial statute requiring Chinese
merchants doing business in the Philippine Islands, to keep
their account books in the English or Spanish language, or
local dialects. The statute was apparently fair on its face,
but it was made to appear to the Court that the effect of
such a requirement in practice, was intended to operate, and
did operate, as an actual prohibition of the right of Chinese
merchants to do business at all. The gist of the Court's
holding in that case was that where a statutory requirement
for doing a lawful business is in substance and practice,
unreasonable and arbitrary, that it must be held to be un-
constitutionally oppressive of the liberty of those affected
by its enforcement where it is demonstrated that unconsti-
tutional results follow in its practical operation and effect,
though the statute be fair on its face.

To give real validity and life to the substantial guaranties
inherent in the language of the Constitution is a judicial
function of the highest importance.

Our fundamental law is more than a mere rhapsody of
words. Not only the letter, but the substance of what is
implied in constitutional language, must be given effect.
Therefore, whenever a judicial proceeding is invoked for
the purpose of conserving constitutional rights as against
the incidence of restrictive statutes, the test of validity is
not what it set forth in the letter of the Act, but how the
statute is operative in its practical application and effect.
Suppression of lawful callings through burdensome and op-
pressive conditions precedent, designed to be enforced by
bureaus, boards or commissions acting under authority of
law, are as much subject to the inhibitive force of the organic

law as are statutes which in terms directly prohibit lawful businesses, trades and occupations to no good purpose.

Under Section 11 of Chapter 14899, Acts of 1931, the condition as to bond is not for a bond designed to protect the public from fraud or deception practiced by those who deal with licensed security dealers, such as would be the case had the required bond provided for satisfaction of judgments obtained against security dealers because of fraud, deceit or misrepresentation practiced by them in the pursuit of their calling as such, or some kindred form of bond requirement. On the contrary, the bond demanded by the State through its Legislature, and designed to be enforced by its agency, the Securities Commission, is a bond unlimited in its liability, except as to amount, and which preserves the liability imposed for many years after the business licensed under it may have ceased to exist. As to surety, the requirement is not that the security demanded be adequate, but that it be of a particular kind, to-wit, a surety company, which kind of surety the evidence shows it is, to all intents and purposes, impossible for any ordinary dealer in securities to give. Such a bond as the statute in its present form requires to be given as a condition precedent to engaging in the business of a security dealer, is not shown to be reasonably necessary to make effective any regulation contained in the Act designed to indemnify the public against loss occasioned by a registered dealer's misconduct in the course of business. On the contrary, its practical effect is simply to prohibit the doing of business altogether, through penalizing the transaction of business by a dealer not registered and then denying registration to those who find it impossible to comply with the oppressive condition imposed.

Thus in substance Chapter 14899, Acts of 1931, as it has heretofore been interpreted and enforced by the agents of

the State, has operated as a practical prohibition of the business of a dealer or salesman of securities, because of the literal terms of Section 11 of that Act, under which no registration could be had by a dealer or salesman except on condition of giving the prescribed bond, no matter how well qualified and reputable as a business man he might otherwise be shown to be and found by the Florida Securities Commission to be.

The evidence submitted by petitioner before the Justice of the Peace as a committing magistrate as shown in the record now before us, tends to show that, as to this petitioner, the enforcement of the Act as heretofore interpreted, would be and is unconstitutional, because of the circumstances that it amounts in effect to an absolute prohibition of petitioner's lawful calling, by attaching to the exercise of that calling, an unreasonable, arbitrary and unduly harsh and oppressive condition precedent, which the evidence shown no ordinary dealer or salesman could conform to in order to become registered.

We therefore hold that while the requirements of registration before engaging in the business of dealer or salesman of securities is not in itself beyond the police power of the State to require to be observed (State ex rel. Davis, Attorney General, v. Rose, et al., as Florida Real Estate Commission, 97 Fla. 710, 122 Sou. Rep. 225), that such statutory regulation providing for the particular bond required by Section 11 of the Act is, by the State and Federal Constitutions rendered incapable of enforcement by criminal prosecution for doing business without registration, so long as the State and its agencies insist upon the observance of unconstitutional bond condition precedent for the observing of registration.

This follows because the requirement of bond, as specified in Section 11 of the Act, is, as we have pointed out,

such an unreasonably burdensome condition, that, so long as enforced by the Florida Securities Commission, operates to preclude the maintenance of criminal prosecution for non-registration of persons who have otherwise complied in all respects with the law and applied for registration but who had been denied registration solely because of their failure to furnish the particular bond held nonessential to registration because of its oppressive character.

That such unconstitutional requirement may, under Section 20 of the Act, be eliminated from its provisions without affecting the other conditions stated, in Section 11, or in other portions of the Act, is clear. But the fact remains that up until the time the present prosecution of petitioner was begun by having been arrested for doing business without being registered, the unconstitutional provision of Section 11 as to bond was being enforced by the State officials as being valid, and was being enforced by them to the point of excluding registrations for applicants otherwise complying with the Act.

Therefore, petitioner having attempted to comply with the law in all particulars wherein he could constitutionally be obligated to comply with it in its present form, is entitled to his release from custody under the criminal charge now pending against him which, in contemplation of law, is a charge against him for doing acts he had the legal right to do, so long as the State predicated its denial of its application for his registration on a condition precedent which the Constitution protects petitioner from being compelled to observe. Frost v. Railroad Commission, 271 U. S. 583, 46 Sup. Ct. Rep. 605, 70 L. Ed. 1101; Hanover Fire Ins. Co. v. Harding (Carr), 272 U. S. 494, 47 Sup. Ct. Rep. 179; 71 L. Ed. 372; Fidelity & Deposit Co. v. Tafoya, 270 U. S. 426, 46 Sup. 331, 70 L. Ed. 664; Terral v. Burke Co., 257 U. S. 529, 42 Sup. Ct. Rep. 188, 66 L. Ed. 352.

·Should the State, in view of this opinion, abandon its attempt to enforce compliance with the bond provision of the Act herein held to be invalid, and extend to petitioner' the privilege of registration upon compliance with the other terms of the Act, and petitioner should then refuse to com-. ply ,or attempt, to comply with .same, nothing in this opinion is to be construed as precluding the State authorities from again instituting and following up any appropriate proceeding designed to enforce obedience to only such of the provisions of Chapter 14899, Acts of 1931, as may be adjudicated to be lawfully enforceable.

.Petitioner is discharged.

. WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.