H. E. GANDY, Sheriff of Escambia County, v. L. L. BORRAS.

154 So. 248.
Opinion Filed April 10, 1934.
Petition for Rehearing Denied April 24, 1934.

504

*John Lewis Reese* and *John M. Coe,* for Plaintiff in Error;

*J. McHenry Jones* and *Terry Richardson,* for Defendant in Error.

DAVIS, C. J.—Sections 3577-3583, C. G. L., 2244-2250, R. G. S., provide that a board of examiners and license commissioners composed of three members shall be appointed by the mayor in each city of this State having 6,000 inhabitants or more, for the purpose of examining and licensing persons who in said cities may engage or work at the business of operating or assisting in the operation of any cinematograph or similar apparatus known as a moving picture machine. Under Section 7718, C. G. L., 5541, R. G. S., any person violating the licensing statutes above mentioned, either as an operator or manager, is subject to a fine not exceeding $100.00 for each and every violation with ninety days imprisonment as an alternative punishment for default in payment of any fine imposed.

The case now before us is one wherein plaintiff in error seeks to reverse a judgment rendered by the circuit court in *habeas corpus* releasing defendant in error from his custody while being held on a charge of violating the above mentioned statute by employing one W. F. Townsell, an unlicensed person, to operate certain moving picture machines at Bayview Park and Sanders Beach within the City of Pensacola, a city of more than 6,000 inhabitants. The re-

lease ordered by the circuit judge was apparently on the theory that the statute under which petitioner was held was unconstitutional. The constitutional grounds alleged were that the statute is violative of the equal protection and due process clauses of the Federal Constitution as well as violative of Section 27 of Article III of the State Constitution requiring appointments of State officers to be made by the Governor.

The business or occupation of managing and operating moving picture machines with their attendant dangers incident to the use of electricity in connection therewith, is one peculiarly within the scope of the police power of the State to regulate. Such regulation may be accomplished in any reasonable manner and may be of such nature and extent as the Legislature may deem to be appropriate.

When a subject lies within the police power of the State, debatable questions as to reasonableness of the exercise of the power, are not for the courts but for the Legislature. The Legislature, by reason of the dangers incident to the use of electricity when employed in the operation of moving picture apparatus, is entitled to legislate not only for the protection and safety of the general public but for the welfare, protection and safety of the motion picture machine operators themselves, since in the preservation of the lives and safety of its citizens, the State undoubtedly has such an interest as to enable it to prescribe the conditions upon which persons within its jurisdiction may engage in occupations of hazardous character.

And. with respect to the regulation of those particular callings and occupations which require the handling and use of electricity by persons employed to operate machines by the use of such agency generally regarded as dangerous, the Legislature is entitled to form its own judgment as to

the necessity, character and scope of any regulations to be imposed. And the Legislature's action within the range of discretion, cannot be set aside because compliance is burdensome, or because the court may think there is no real necessity for the regulations prescribed. Sproles v. Binford, 286 U. S. 374, 52 Sup. Ct. Rep. 581, 76 L. Ed. 1167; Standard Oil Co. v. Maryville, 279 U. S. 582, 49 Sup Ct. Rep. 430, 73 L. Ed. 856; Price v. Illinois, 238 U. S. 446, 35 Sup. Ct. Rep. 892, 59 L. Ed. 1400; Hadacheck v. Sebastian, 239 U. S. 394, 36 Sup. Ct. Rep. 143, 60 L. Ed. 348, Ann. Cas. 1917B 927; Euclid v. Ambler Co., 272 U. S. 365, 47 Sup. Ct. Rep. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works, 274 U. S. 325, 47 Sup. Ct. Rep. 594, 71 L. Ed. 1074.

To provide a safeguard against the dangers of inefficiency and incompetency in the use of electricity in moving picture machines, the Legislature may provide that only persons who have been first examined and thereafter licensed by some agency designated by it for that purpose, shall undertake to engage in or work "at the business of" operating or assisting in the operation of such moving picture machines, and may make its regulations and prohibitions in that regard applicable to all communities, or to such reasonably ascertained and designated classes of communities only, in this State, as the Legislature may deem essential for the safety and welfare of the public. State v. Loden, 117 Md. 373, 83 Atl. Rep. 564, Ann. Cas. 1913E 1300; State, *ex rel.* Davis, Atty. Gen. v. Rose, 97 Fla. 710, 122 Sou. Rep. 225.

The Legislature of a State may prescribe the qualifications of persons authorized to engage in any trade or occupation which affects the public and requires special knowledge or skill, subject however to the limitations that unreasonable regulations and conditions will be declared void as a denial

of constitutional liberty and of the equal protection of the laws. Riley v. Sweat, 110 Fla. 362, 149 Sou. Rep. 48; 12 C. J. 1161.

In the present case it appears that the statute prescribes a reasonably certain standard of qualification in that under Section 3579, C. G. L., 2246, R. G. S., the scope of the examination is confined to a practical and elementary test of the applicant as to his knowledge of electricity, coupled with at least one year's practical experience with moving picture machines if an operator, or one year's service under an experienced operator if an assistant to an operator.

After prescribing a standard of qualification of its own, the Legislature may thereafter, as a matter of administration of its declared will, provide for officially approved agencies or officials to execute its statutory purposes concerning determination of the facts upon which the law is to operate, by conducting appropriate examinations of applicants to ascertain the factual experience of their qualifications under the law.

Examining boards, when provided for by statute to officially ascertain the qualifications of persons assumed to possess some special knowledge or skill, without which they would not be permitted under regulations prescribed by law, to engage in some business, profession or occupation requiring it, are simply legislative agencies set up to ascertain and declare the particular factual conditions upon which the statute itself takes effect.

Where a particular profession, business or occupation to be regulated is that engaged in only inside the limits of cities or towns of a specified class, and the examination to be made is confined to an inquiry into the appellant's qualifications to practice his trade or profession in some particular locality only, where the examination is to be

made and the license is to be issued, there appears to be no constitutional objection susceptible of being asserted in derogation of the power of the Legislature to adopt as its own mechanism the instrumentality of a municipally appointed board as its official agency for the purpose of making examinations, and ascertaining the qualifications of, persons assuming to practice some business, trade or profession solely in the city or town where the local board is authorized to act.

Members of a locally appointed examining board, named by the mayor of a city under authority of a statute, the jurisdiction and power of which board to conduct examinations and grant licenses, is confined to the territorial jurisdiction of the municipality within which the board acts, are not State officers, but are municipal officers, and as such are not required by Section 27 of Article III of the Constitution to be appointed by the Governor or elected by the people, although they may serve under State law the purposes of a legislative agency vested with statutory authority to grant licenses to practice or engage in a business, profession or occupation in the locality, which the State statute prohibits one from engaging in or practicing without a certificate of qualifications conforming to the requirements of a general enactment applicable to all cities and towns in the State of a specified population.

The fact that the statute applies only in cities or towns having 6,000 population or more does not *per se* render the statute obnoxious to the due process, or equal protection clauses of the United States Constitution, nor violative of our own constitutional provision which requires penal statutes to be of uniform operation throughout the State. Hiers v. Mitchell, 95 Fla. 345, 116 Sou. Rep. 81; Noble v. Carlton, 36 Fed. (2nd) 967; Sparkman v. County Budget

Commission, 103 Fla. 242, 137 Sou. Rep. 809; State, *ex rel.* Buford, Atty. Gen., v. Daniel, 87 Fla. 270, 99 Sou. Rep. 804; Beasley v. Cahoon, 109 Fla. 106, 147 Sou. Rep. 288.

Based on the foregoing considerations, we hold that Chapter 6955, Acts of 1915, now Sections 3577-3583, C. G. L., 2244-2250, R. G. S., and Section 7718, C. G. L., 5541 R. G. S., is a valid exercise of the legislative power of the State and is constitutional. The Act is not arbitrary in the sense dealt with in Bessette v. People, 193 Ill. 334, 62 N. E. Rep. 215, 56 L. R. A. 558. Here there is conceivably a reasonable basis for the statute which undertakes to regulate the business of operating moving picture apparatus in the larger cities while omitting the smaller as a matter of legislative wisdom and policy. This makes regulation applicable where the dangers of incompetence are most likely to be disastrous.

Reversed for appropriate proceedings.

WHITFIELD and TERRELL, J. J., concur.

BROWN, J., concurs in conclusion.

ELLIS and BUFORD, J. J., dissent.

ELLIS, J. (dissenting).—L. L. Borras operates an open-air free moving picture show at Bay View and Sanders Beach. Neither the screens on which the pictures are shown nor benches on which the people of the audience sit are in a building. Borras employed W. F. Townsell to operate one of the machines. He had not successfully passed an examination and received a license as required by "Chapter 3581, Compiled General Laws of the State of Florida." A warrant charging that offense was issued by a justice of the peace in Escambia County for the arrest of Borras who applied for and obtained a writ of habeas corpus and on the hearing was remanded to the custody

of the sheriff by the Honorable L. L. Fabisinski, Circuit Judge.

Upon a rehearing being granted the judge revoked his order remanding the petitioner and ordered him to be discharged.

That judgment comes here on writ of error obtained by the sheriff upon leave granted by the court.

Sections 3577 to 3583, inclusive, Compiled General Laws, purport to regulate the matter of the operation of moving picture machines. A person engaging or working at the business of operating or assisting in the operation of such a machine is required to obtain a license. A board of examiners and license commissioners in each city in the State is required by the law to be appointed by the mayor of each city. Each applicant is required to pay to the board a fee of one dollar and is required to "pass an examination as to his qualifications" as the board may direct.

The character of the examination the applicant is required to submit to is not prescribed except in most general terms. It is required to be of a "practical and elementary character but sufficiently strict to test the qualifications of the applicant as to his knowledge of electricity." It is made an offense for the owner, proprietor or manager of "any theatre or moving picture show in any city" to employ an operator of a moving picture machine who has not successfully passed the examination and obtained a license.

Section 3582, C. G. L., 1927, provides that the law shall not apply to cities and towns of less than 6,000 inhabitants. Now, the machine was operated at Bay View Park and Sanders Beach within the City of Pensacola, a city of more than 6,000 inhabitants. The show is conducted in the open air, not within any building, and no charge for admission is made.

The Act is an effort of the State in the exercise of its police power to regulate the operation of moving picture machines. The public necessity which gives rise to the exercise of such power is the supposed danger attendant upon the operation of such machines from damage by fire. The supposed highly inflammable material of which the picture reels or films are made and the use of an electrical current for light in the operation of the machines is the ground on which the power is attempted to be exercised. Where people, constituting the spectators at such a show, are gathered in a building in a city the highly inflammable nature of the films which are unwound in close proximity to an electric light or an electric current which forms the power for unwinding and rewinding the films, the danger from fire subjects the audience to unusual danger and the property in which the picture is exhibited to an unusual risk from fires which may be started by an inexperienced person attempting to operate the machine.

If those propositions are all true, and if it is a fact that a picture film is a highly inflammable substance, there exists a reasonable ground for the exercise by the State of the power attempted to be exercised through the medium of the statutes mentioned, but where the audience is seated in the open air and the machine is not in a building and the screens upon which the pictures are cast are in the open air, it would seem that the reason for the law ceases and the exercise of the power would seem to be to no purpose as applied to the conditions existing in this case. A police regulation in the form of a statute may be so arbitrary and confiscatory in operation or application as to be held invalid as applied to the new or subsequently discovered conditions which might, unexplained, be within the purview of the Act. See Mayo v. Florida Fruit Growers Protective Assn., 112

Fla. 117, 151 South. Rep. 25. To apply the Act to the circumstances as shown by this record is to extend it beyond the purpose of its enactment to preserve or protect the public from danger, and make it serve some ulterior selfish end of some moving picture competitor.

In the case at bar the power attempted to be exercised to examine an applicant and issue to him a license to operate a moving picture machine is not a municipal power. The board of examiners designated by the mayor is an agency for the State and its powers as to the character of examination to which an applicant may be subjected are not defined by statute but left to what may be the capricious or whimsical humor of the board at any given time when dealing with any certain applicant. The scope which the examination of any applicant may take may be so broad and difficult and unrelated to the business in hand on occasion as to preclude any applicant, not possessed of the board's favor, or whose proposed employer is not so favorably circumstanced, from obtaining a license. Even the matter of "knowledge of electricity" is a subject so profound as that an examination upon it could be made impossible to pass by nearly any applicant.

Police power is the power inherent in government within constitutional limits to promote the order, safety, health, morals and general welfare of society. The power, however, cannot be defined so as to absolutely indicate its limits by including everything to which it may extend. The courts decide as each case arises whether the police power extends thereto. See Stone v. State, 101 U. S. 814, 25 L. Ed. 1079.

The power has been said to be a system of precaution to prevent crime or calamities. Board of Canal and Locks Commissioners v. The Willamette Transportation and Locks Co., 6 Or. 219, text 222.

The scope of the power is commensurate with what the Legislature reasonably believes to be necessary for the protection and preservation of the health, safety, morals and welfare of its citizens. State v. Grier, 27 Del. 322, 88 Atl. Rep. 579.

It is not a fixed quantity in the sense that it is confined by any inflexible rules because it may be exercised from time to time to meet changed conditions of society. Carr v. State, 175 Ind. 241, 93 N. E. Rep. 1071, 32 L. R. A. (N. S.) 1190.

While it may not be necessary to grant the police power to a municipality in express words, as by the organization of the municipality, its establishment under our Constitution, the power necessary to the performance of its functions and protéction of its citizens in their persons and property is imparted by the State. See Gundling v. Chicago, 176 Ill. 340, 52 N. E. Rep. 44, 48 L. R. A. 230.

But the power cannot be delegated to private persons. Owensboro & N. R. Co. v. Todd, 91 Ky. 175, 15 S. W. Rep. 56, 11 L. R. A. 285.

The particular subjects of regulation by the State through its police power are too numerous to attempt to mention here. It is sufficient to say that the regulation of moving picture shows and operation of moving picture machines is justified where such operation is attended by danger from fires and consequent dangers from panic in a crowd of people assembled in a room or building where in all cases the exits provided seem never to be adequate to the needs of a terrified, panic-stricken crowd of people.

In all cases of the attempted exercise of the police power however, the object must be the public good. There must be some clear, real, substantial connection between the assumed purpose of the enactment and the actual provisions

of the law. See Lawton v. Steele, 152 U. S. 133, 38 L. Ed. 385, 14 Sup. Ct. Rep. 499; Rippe v. Becker, 56 Minn 100, 57 N. W. Rep. 331, 22 L. R. A. 857; State v, Phelps, 144 Wis. 1, 128 N. W. Rep. 1041, 35 L. R. A. (N. S.) 353.

While it is the duty of the courts to enforce the State's police regulations enacted by the Legislature in good faith and with reasonable and appropriate regard for the protection which the State owes to its citizens in the protection of their safety, health and property, it is nevertheless within the power of the court to determine whether the legislation purporting to be enacted in the exercise of the police power is really such and whether the regulations prescribed by the Legislature are unreasonable or are otherwise unconstitutional. Such questions are judicial. McLean v. State of Arkansas, 211 U. S. 539, 53 L. Ed. 315, 29 Sup. Ct. Rep. 206; Jacksonville v. Ledwith, 26 Fla. 163, 7 South. Rep. 885, 29 Am. St. Rep. 558, 9 L. R. A. 69.

In the latter case this Court, speaking through Mr. Chief Justice RANEY, said: The police power "should not be used for other purposes, nor further than is necessary to fully effect the legitimate end in any particular case falling within its proper exercise." In the eighth headnote to that case, which epitomizes the Court's view, it is said: "The courts are the final judges as to what are proper subjects of the police power, and the law-making power cannot arbitrarily make that a subject of its exercise which, from its nature, is not one."

Not only must the end sought to be attained by exercise of the police power be appropriate but the means to such end must also be appropriate. State v. Phelps, *supra*.

In the case of *Ex Parte* Lewis, 101 Fla. 624, 135 South. Rep. 147, this Court, speaking through Mr. Justice DAVIS, said: "The courts indulge the presumption that, if any

state of facts can be conceived of which would sustain the reasonableness and validity of an Act of the Legislature, such state of facts exists and justifies the enactment. Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455."

The doctrine so expressed seems to be the very limit to which it may be carried. I apprehend that the test is not whether it is possible to conceive of a state of facts that might sustain the reasonableness of the Act, but whether as applied to the state of facts the power has been reasonably exercised. It is easy to conceive of an assemblage of people in a house to which they have gone for entertainment by the operation of a moving picture machine by which pictures are thrown upon a screen, and that by reason of the highly inflammable nature of the picture reels and the use of an electric current in operating the machine, the danger of injury from fire to both audience and property is greatly increased and the possibility of death to many and injury to others from a frenzied crowd confined in a building threatened by fire not unlikely, but in such case why the conceivable facts should impart validity to an Act regulating the operation of moving picture machines, which is broad enough in its terms to prohibit the operation of such a machine in the open air in a park or vacant lot where all the apparatus is in the open and the audience is also in the open air, unless the operator of the machine conforms to the requirements of the statute, is difficult to perceive.

The Act may be valid as applied to a situation which exists in most towns and cities of the State whose inhabitants are infected by the moving picture habit, but invalid as applied to a different situation in the same cities as for instance where none of the attendant dangers exist

or may be conceived to exist from the operations of the machine.

I am of the opinion that a situation such as is shown to exist by the record in this case does not present such a public necessity or creates such a danger to either persons or property that justifies the application of the terms of the Act to the owner of the moving picture machine.

There are other objections to the Act in its entirety, such as the powers which the board may exercise in the examinations to which it may subject the applicant for a license or certificate; the discrimination between cities of 6,000 inhabitants and those of less population, and the omission completely to regulate the operation of such machines outside any cities of whatever size or population where crowds of people may assemble in buildings in amusement parks to witness a moving picture show. These omissions and discriminations show an unreasonable exercise of the police power, because the same need for the protection of property and life exists in places to which the Act is not applicable as exists in cities of 6,000 population.

I think, therefore, that the judgment of the circuit court should be affirmed.

BUFORD, J., concurs.