106 So.2d 188 (1958)
J. Edwin LARSON, State Treasurer of the State of Florida, as Insurance Commissioner of the State of Florida, Appellant,
v.
Melvin M. LESSER, Appellee.
Supreme Court of Florida.
November 5, 1958.
Richard W. Ervin, Atty. Gen., and Allan F. Milledge, Asst. Atty. Gen., for appellant.
Cypen, Salmon & Cypen and Michael H. Salmon, Miami Beach, for appellee.
*189 THORNAL, Justice.
Appellant Larson, who was defendant below in a declaratory judgment proceeding, seeks reversal of a final decree declaring Section 636.261, Florida Statutes 1957, F.S.A., to be unconstitutional.
The point to be determined is whether the cited statute constitutes an invalid attempt to invade the appellee's right to contract.
Appellee Lesser was engaged in the business of a "public adjuster" as defined by Section 636.23, Florida Statutes, F.S.A. He advertised his business publicly and in addition directly solicited contracts for his services. The record reveals that approximately ninety percent of the business of the appellee was obtained by such direct solicitation. The manner of his operation was simply that when he learned of a loss contemplated by the statute, which we hereafter quote, he contacted the insured and solicited the business. He was paid on a contingent fee basis depending on the ultimate results of any settlement reached. The extent of the services rendered by appellee was that he aided in preparing an inventory of the property lost as the result of a fire; he assisted in fixing a value on such property; he made estimates as to possible salvage values and also assisted in the preparation of the claim to be submitted by the insured. The record reveals that appellee did not undertake to advise the insured as to the legal effect of his insurance contract. He did not undertake to interpret the contract, advise as to the validity of the claim, the possibility of recovery or the necessity for filing suit.
As will be pointed out in more detail, Section 636.261, Florida Statutes, F.S.A., prohibits the direct or indirect solicitation of business by so-called public adjusters. The appellee filed a complaint for a declaratory decree asking the Chancellor to declare Section 636.261, Florida Statutes 1957, F.S.A., unconstitutional. By his final decree the Chancellor held the statute under attack to be violative of the organic law. The appellant seeks reversal of this decree.
It is the contention of the appellant that the statute involved is no more than a reasonable regulation of a business affected with a public interest and that in the exercise of its police power, the State has adequate authority to promulgate such a regulation.
It is the contention of the appellee that the business of a public adjuster is recognized by law as being a legitimate occupation and that the statutory regulation under assault is tantamount to absolute prohibition contrary to the protective guaranties of Section 12, Declaration of Rights, Constitution of Florida, F.S.A., and the Fifth and Fourteenth Amendments to the Constitution of the United States.
Section 636.23, Florida Statutes 1957, F.S.A., defines various types of adjusters as follows:
"(5) `Public adjuster' shall mean any person, except a duly licensed attorney at law as hereinafter provided, who, for money, commission, or any other thing of value, acts or aids in any manner on behalf of an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract, other than life, annuity, accident and health, or who advertises for employment as an adjuster of such claims; and shall also include any person who, for money, commission or any other thing of value, investigates or adjusts such claims on behalf of any such public adjuster.
"(6) `Independent adjuster' * * * who undertakes on behalf of an insurer to ascertain and determine the amount of any claim, loss, or damage payable under any contract of insurance, * *.
"(7) `Company employee adjuster' * * * who undertakes on behalf of such insurer * * * to ascertain and *190 determine the amount of any claim, loss or damage payable under any contract of insurance, * * *.
"(8) `Claims investigator' * * * whose responsibilities shall be as defined above for an independent adjuster or company employee adjuster, * *.
"(9) `Nonresident adjuster' * * * who is a currently licensed or authorized adjuster in his home state for the type or kinds of insurance he intends to adjust claims for in this state, * *.
"(10) `Catastrophe' or `Emergency adjuster' * * * to adjust claims, losses, or damages under the policies of insurance issued by said insurers." (Emphasis added.)
Section 636.23(3), Florida Statutes 1957, F.S.A., defines a policy of insurance as follows:
"(3) `Contracts' or `policies of insurance' shall include all kinds of insurance contracts or policies, other than life, annuity, accident and health, including membership certificates and reciprocal or interinsurance agreements or contracts."
It will be noted that the so-called public adjuster is the only one who is limited by definition to act on behalf of an insured. The others, by definition, represent insurers. Another difference is that the public adjuster is limited to dealings between the insured and the insurer. The other types of adjusters defined by Statute represent insurers in the settlement of any claims under an insurance contract.
Section 636.261, Florida Statutes, F.S.A., which is the particular section under assault, reads as follows:
"Public adjusters, personal solicitation prohibited

"No public adjuster shall personally solicit or contact, either directly or indirectly, on his own behalf or on the behalf of any other person, firm or corporation any person or their legal representatives, husband or wife, dependents or next of kin for the purpose of representing their interest in any claim arising out of a contract or policy of insurance as defined in § 636.23(3). Upon proof of any violation of this section, the commissioner may revoke said adjuster's license."
By the last quoted statute the Legislature undertook to prohibit the public adjusters within the limit of their authority from soliciting or contacting an insured for the purpose of representing his interest in any claims arising out of an insurance policy. No similar provision imposing the same restriction on other types of adjusters has been enacted by the Legislature. Likewise, all types of adjusters, including public adjusters, are permitted to advertise their services without restriction.
Actually, it appears to us that the distinction between "advertising" and "soliciting" is merely one of degree rather than substance. It could hardly be denied that advertising publicly is a form of solicitation. This is so for the reason that one who advertises his wares or services does so with the obvious objective of inviting the public to purchase what he has to sell or employ the services which he has to offer. It is unnecessary, however, for us to labor this point.
The effect of the statutory provision under assault simply is that the public adjuster who represents insureds is prohibited from soliciting business. The other types of adjusters representing insurers are free to solicit business at will. The Chancellor had the view that there was a sufficient difference between the services rendered by a public adjuster to an insured and the services rendered by other types of adjusters to the insurers as to justify some difference in regulation insofar as the contended denial of equal protection of the laws was concerned. This view of the Chancellor is not here contested by the parties. We therefore offer no further *191 comment on it. However, the Chancellor also had the view that inasmuch as the Legislature has recognized public adjusting as a perfectly legitimate business, he could find no merit to the contention that it was in the interest of the public welfare to sustain the prohibition against solicitation provided by Section 636.261, Florida Statutes, F.S.A.
At the outset we dispense with any notion that we are here dealing with a problem related to the unauthorized practice of law or otherwise affecting the practice of law. In the first place the definition of a public adjuster set out in Section 636.23, supra, excepts "a duly licensed attorney at law as hereinafter provided". Section 636.36, Florida Statutes 1957, F.S.A., excepts duly licensed attorneys at law from the licensing requirement of the Insurance Adjusters Act.
The parties agree here, as they did before the Chancellor, that a determination of the legal question presented does not involve any consideration of possible impingements on the practice of law as such or any relaxation of the rule of ethics which prohibits lawyers from soliciting or advertising for business. Since attorneys at law are not affected by the act we offer no further comment on the subject save to observe that the solicitation of and advertising for business by lawyers naturally remains one of discipline to be disposed of under the Canons of Ethics, 31 F.S.A. rule B, § 1, subd. 27. Similarly should be public adjuster engage in the practice of law, his offense would become one for prosecution under appropriate statutes
We think it well to interpolate that the decree of the Chancellor comes to us without the customary presumption of correctness in view of the fact that it involved his determination of the unconstitutionality of a statute. While it is true that ordinarily a final decree under assault is reviewed in the light of a presumed correctness on the part of the lower court, this rule, however, does not apply when the trial judge has adjudicated the unconstitutionality of a statute. Rather, the act of the Legislature comes to us clothed with presumed constitutionality and it remains the burden of one who contends for its invalidity to overcome this presumption even on appeal. Mayo v. Florida Grapefruit Growers' Ass'n, 112 Fla. 117, 151 So. 25.
We now reach the actual ruling of the Chancellor which is under assault. On the basis of the record presented to him he followed the rule that it is appropriate to consider the effect of a statute on the constitutional rights of a citizen from the aspect of its practical impact rather than the strict letter of the law itself. He had the further view that when the practical effect of a statute is to prohibit the operation of a lawful business, under the guise of regulation, then the statute may properly be declared unconstitutional unless the public welfare demands the contrary. In sum, he concluded that the effect of Section 636.261, Florida Statutes 1957, F.S.A., would be to make it impossible from a practical standpoint for public adjusters to engage in a business which is otherwise recognized by statute as being lawful. He found no public need for the so-called statutory regulation. Consequently, he held the act unconstitutional.
We hold that he ruled correctly. It requires no extensive citation of authorities to support the proposition that in order to justify the exercise of the police power the Legislature must be supported by some sound basis of necessity to protect the public morals, health, safety or welfare. Sweat v. Turpentine & Rosin Factors, 112 Fla. 428, 150 So. 617.
We ourselves have held that while there is no such thing as an absolute freedom of contract, nevertheless, freedom is the general rule and restraint is the exception. Any restraints imposed by legislation on the right to contract must not be arbitrary or unreasonable. The right to make contracts, whether for the acquisition of *192 property or for personal employment, is an aspect of private property which should not be struck down or arbitrarily restrained unless such restraint be reasonably justified by the needs of the public health, safety or welfare. Ex parte Messer, 87 Fla. 92, 99 So. 330; Riley v. Sweat, 110 Fla. 362, 149 So. 48; Adkins v. Childrens Hospital, 261 U.S. 525, 43 Sup.Ct. 394, 67 L.Ed. 785.
In the instant case the privilege of engaging in the business of a public adjuster has been recognized as a valid and legitimate occupation by legislative definition. Search as we have done in this record, we fail to find any reasonable basis whatever in the public health, welfare or safety that justifies the imposition of a restriction which, according to this record, would have the practical effect of prohibiting the appellee from actually engaging in the business which the Legislature itself recognizes as being perfectly legitimate. In other words there appears to be no rational relationship between the demands of the public welfare and the restraint imposed by the act.
We distinguish the instant case from McCloskey v. Tobin, 252 U.S. 107, 40 Sup.Ct. 306, 64 L.Ed. 481, which involved a statute of the State of Texas making it unlawful for a person to seek employment to prosecute, defend, present or collect any claim by solicitation. Vernon's Annotated Penal Code, art. 430. The evil obviously sought to be prohibited by the Texas statute was commonly known as barratry or stirring up litigation. The Texas statute leveled restraint not only against presenting or collecting claims but also against prosecuting or defending claims as the result of having solicited them. It was the stirring up or conducting of litigation as a product of solicitation that justified the enactment of the Texas statute in the McCloskey case. We are not confronted with the same situation here because the public adjuster has no authority to prosecute or defend claims. The limits of his authority are merely to represent an insured in the preparation and submission of a claim under his insurance contract. His dealings are entirely between the insured and the insurer. There is no contention whatever that he is authorized to litigate the claim or in any fashion present or prosecute it through the courts. In fact, if he were to do so, he would be trespassing upon the area defined for the practice of law and would be subject to appropriate penalties.
Holding as we do that the Chancellor ruled correctly in his conclusion that Section 636.261, Florida Statutes 1957, F.S.A., is unconstitutional, the final decree is 
Affirmed.
HOBSON, DREW and O'CONNELL, JJ., concur.
TERRELL, C.J., and THOMAS and ROBERTS, JJ., dissent.
THOMAS, Justice (dissenting).
This litigation had its inception in a complaint filed by the appellee against the appellant in which the former asked for a decree defining his rights and privileges as a public adjuster holding a license to engage in that occupation, his only source of livelihood, from 1 October 1956 to 30 September 1957. The license was issued under the provisions of Chapter 29640, Laws of Florida, Acts of 1955, F.S.A. § 636.22 et seq. During the term of the appellee's license, the act was amended in Chapter 57-239 by changing the definition of "Public Adjuster" and prohibiting personal solicitation of insurance claims by persons acting as such adjusters.
The relevant provisions of the law are found in Chapter 636, Florida Statutes 1957, F.S.A. Roughly, a "`Public Adjuster'" is defined as a person, other than an attorney at law, who, for compensation acts on behalf of an insured in the investigation, negotiation, adjustment or settlement of *193 claims for damage covered by an insurance contract, other than a life or health, or an annuity or accident policy, or who advertises that he will serve in such capacity, Sec. 636.23(5).
The part of the law that brought forth this controversy condemns the solicitation of business by a public adjuster in this language: "No public adjuster shall personally solicit or contact, either directly or indirectly, on his own behalf or on the behalf of any other person, firm or corporation any person or their legal representatives, husband or wife, dependents or next of kin for the purpose of representing their interest in any claim arising out of a contract or policy of insurance * * *." Proof of violation of this section could result in revocation of the adjuster's license. Sec. 636.261.
The law, Chapter 29640, supra, before it was amended contained in the definition of public adjusters a reference to persons who not only operated as adjusters in the manner already detailed but who solicited such employment. Sec. 636.23, supra. So under the earlier law although a public adjuster was described as one who solicited, under the later law, solicitation was denounced.
The appellee claimed in his complaint that the restriction imposed on public adjusters was illegal, arbitrary and discriminatory, and violated Sec. 12 of the Declaration of Rights of the Constitution of Florida and the Fifth and Fourteenth Amendments of the Constitution of the United States.
The chancellor held that Sec. 636.261, supra, was void and inoperative and permanently enjoined the appellant from revoking the license of the appellee for infraction of the prohibition against solicitation of business. It is important to note that the law permits a public adjuster to advertise his services, by defining him as one who, among other activities, "advertises for employment as an adjuster," but he may not "personally solicit or contact" a client.
There is considerable comment in the briefs about the effect of the debatable provisions on conduct of attorneys at law but this seems inapposite. The definition of public adjuster in both laws excepts "duly licensed attorney[s] at law as hereinafter provided." This reference to attorneys doubtless applies to a subsequent provision that they need not be licensed to participate in the adjustment of claims arising from contracts of insurance. Sec. 636.36. Whether or not persons operating as public adjusters are non-lawyers or lawyers who do not practice seems not to change the complexion of this controversy. Inasmuch as practicing attorneys are not affected by the act, there is no need further to comment on their engaging in the business other than to observe that if they were to mingle their activities with the practice of their profession and solicit, or even advertise, the matter would become one of discipline to be determined under the code of professional ethics.
The field is open to persons desiring to enter the business of aiding others in the settlement of insurance claims. The only fair way to meet the present problem is objectively to decide whether or not the law, which permits advertisement, by somebody or other holding himself out as an adjuster, is valid so far as it penalizes the same given person for soliciting as well.
Before discussing further the main point in the case, the validity of the provision of the cited law prohibiting solicitation by public adjusters, the position of the appellee with reference to the weight which the decree of the chancellor should receive in this court should be determined. The appellee insists that the chancellor's ruling in this case arrived here with a presumption of correctness. To support the statement we are referred to Johnson v. Roberts, Fla., 79 So.2d 425, and Picchi v. Picchi, Fla., 100 So.2d 627. In the former, the court was asked to reverse a decree based on evidence taken before the chancellor which did not appear here in an authenticated transcript. In the latter, a divorce case, the court dealt with the question whether or not the evidence *194 supported the chancellor's findings. Obviously the rule was appropriate in both cases.
The rule with reference to the presumption of correctness to be accorded a chancellor's decision does not, however, obtain in the present appeal because the chancellor who decided this controversy declared a statute unconstitutional. There is no presumption in such an instance that the ruling was free of error. Spencer v. Hunt, 109 Fla. 248, 147 So. 282; Mayo v. Florida Grapefruit Growers' Protective Ass'n, 112 Fla. 117, 151 So. 25. The rule that decisions of courts of original jurisdiction holding statutes unconstitutional do not come to this court with the presumption of correctness should be re-affirmed.
The appellee has directed us to a decision upon which he relies to support his position that his constitutional rights have been violated because he may no longer solicit business though he may advertise that he is in business as a public adjuster. It was rendered in Prior v. White, 132 Fla. 1, 180 So. 347, 116 A.L.R. 1176. It appears from the facts then involved that a city had prohibited door-to-door solicitation except upon invitation of the householder. A Fuller Brush salesman challenged the law and this court held it unconstitutional because it was an unreasonable interference with the conduct of a lawful business.
He has also cited Riley v. Sweat, 110 Fla. 362, 149 So. 48, in which the well-recognized principle was stated that a legitimate business may not be demolished by regulation.
This writer is not convinced that the solicitation denied public adjusters results in the destruction of their business though the restriction may be awkward and to some extent burdensome. They may still advertise to the public that their services are available and they may do whatever public adjusters do once they are employed. It may well be that there is such a difference between solicitation made by a salesman who goes from place to place trying to sell his wares to housewives and an adjuster who descends on a person in distressful circumstances because of the loss of his property by fire, to justify making the difference a distinction.
The argument that inasmuch as a policyholder has no need for the services of an adjuster until he suffers a loss and that an adjuster could not get business unless allowed to solicit it, despite his right to advertise, is not convincing. With the exception of solicitation he is permitted to let the world know what services he is prepared to perform and where he may be found, the same as any other businessman. The contention that since such services are needed in emergent situations, solicitation is warranted, and prohibition of it is arbitrary and unreasonable and destructive of the adjusters' business, should be rejected. It may be more plausibly argued that while one is in sudden unfortunate circumstances he should not be subjected to appeals of those who would represent him in seeking redress for his loss.
The Supreme Court of the United States considered a similar proposition in McCloskey v. Tobin, 252 U.S. 107, 40 S.Ct. 306, 64 L.Ed. 481. By statute of the State of Texas it was unlawful for a person to seek employment to prosecute, defend, present or collect any claim by solicitation. It was insisted that the prohibition violated the solicitor's right of liberty and property. The court held that prohibition of solicitation was but regulation, not destruction of the solicitor's business. It was observed by the court that "[t]he evil against which the regulation is directed is one from which the English law has long sought to protect the community through proceedings for barratry and champerty. * * * Regulation which aims to bring the conduct of the business into harmony with ethical practice of the legal profession, to which it is necessarily related is obviously reasonable. * * *"
Of similar import are the decisions in Brazee v. People of State of Michigan, 241 U.S. 340, *195 36 S.Ct. 561, 60 L.Ed. 1034; Williams v. State of Arkansas, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673. See 4 F.L.P. 399.
The presumption of validity of the challenged act has not, in the opinion of the writer, been overcome, Spencer v. Hunt, supra. See 2 Fla.Jur. 570.
TERRELL, C.J., and ROBERTS, J., concur.