STATE OF NORTH CAROLINA EX REL. W. D. SMITH v. THE FIDELITY
AND DEPOSIT COMPANY OF BALTIMORE, MD.

(Filed 28 April, 1926.)

1. Statutes—Police Powers—Public Policy — Corporations — Worthless
Shares of Stock—Constitutional Law.

It is within the police powers of a state to pass a statute for the pro-
tection of its citizens against the sale to them of worthless shares of
stock in speculative companies in the exercise of a reserved power in the
state from that granted to the general government, and does not contra-
vene either the State or Federal Constitution. 3 C. S., 6363-6372.

2. Same—Insurance Commissioner — Principal and Surety — Actions—
Fraud—Cui Tam Actions.

Where the Insurance Commissioner has required a bond conditioned
in a certain amount to protect the investor from the fraudulent represen-
tations of the agent selling its shares in North Carolina under the pro-
visions of C. S., 6372, the exercise of this power by the commissioner in
the respect stated is valid, and the one injured by the fraud may main-
tain an action against the surety on the bond upon its penalty on relation
of the State.

3. Same—Statutes—Interpretation.

By express provision of chapter 190, Public Laws of 1925, known as
the Blue-Sky Law, its provisions do not affect those of prior statutes on
the subject, and those of 3 C. S., 6363-6372 are applicable to causes of
actions theretofore arising.

4. Demurrer—Misjoinder—Principal and Surety.

Where two causes are alleged in an action against the surety arising
under the same bond, a demurrer by the surety for misjoinder of parties
and causes of action is bad.

APPEAL by plaintiff from *Finley, J.,* at September Term, 1925, of
FORSYTH. Reversed.

This case was first heard by the judge of the Forsyth County Court
on demurrer of defendant. The demurrer was sustained and the action
dismissed. Upon appeal to the Superior Court the judgment of the
county court was affirmed, and plaintiff appealed to the Supreme Court.

The necessary allegations for the determination of the appeal will
be considered in the opinion.

*Holton & Holton for plaintiffs.*
*Ratcliff, Hudson & Ferrell for defendant.*

CLARKSON, J. Vol. 3 C. S., 6363, amended by Public Laws 1923, ch.
161, reads as follows: "Before any bond, investment, dividend, guarantee,
registry, title guarantee, debenture, or other like company (not strictly

an insurance company as defined by this chapter), or any individual, corporation, or partnership who, by agents, offers for sale or sells the stocks, bonds, securities, or obligations of any foreign corporation, whether organized or to be organized or being promoted, may be authorized to do business in this State, such company, individual, or partnership must be licensed by the Insurance Commissioner; and the Commissioner is authorized to issue such license when he is satisfied that such company or corporation is safe and solvent, and has complied with the laws of this State applicable to fidelity companies and governing their admission and supervision by the Insurance Department. The term 'security,' or 'securities' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas or mining lease, collateral trust certificate, any transferable share, investment contract, or benefit interest in or title to property or profits, or any other instrument commonly known as a security. If such company is chartered and organized in this State and has its home office within the State, and is solvent to the extent of at least fifteen thousand dollars, it may, if a stock company, commence business with a capital stock of twenty-five thousand dollars. The license issued to such companies and their agents shall be issued and paid for as provided for those of insurance companies. This section shall also apply to every corporation, company, copartnership, or association organized or to be organized in this State where such company or organization by its organizers or promoters puts or proposes to put the stock of the company on the market in person or by agents."

C. S., 6372, is as follows: "No person shall transact or offer to transact business in this State as agent for such company, or transact or offer to transact any business described in this article unless such person shall hold a license issued by the Insurance Commissioner. *The license shall issue only upon the filing with the Insurance Commissioner by such agent of a bond in the sum of one thousand dollars* ($1,000), *with such conditions and sureties as may be required and approved by the Insurance Commissioner.* The license shall expire on the first day of April following, unless the authority is sooner revoked by the Insurance Commissioner, and such authority shall be subject to revocation at any time by such officer for cause appearing to him sufficient. The fee for such agent's license shall be the same as prescribed for fidelity companies."

It may be noted that a more stringent act, known as the "Blue-Sky Act," was passed, Public Laws of North Carolina, 1925, ch. 190, p. 415, entitled "An act to provide laws governing the sale of stocks, bonds and

other securities in the State of North Carolina." Section 25 of this act is as follows: "All laws and clauses of law in conflict with this act are hereby repealed: *Provided, however,* that this clause shall not be construed to prevent the prosecution of any offenses committed before the passage of this act against any law or laws heretofore in force, but all such crimes and offenses committed before the ratification of this act may be prosecuted to final judgment under the laws in force at the time of the commission of such crimes or offenses. *This act shall not affect any right accrued or liability incurred prior to the ratification of this act."*

The present action is brought under the old statute, the rights are especially protected in section 25, *supra.*

The purpose of this wise legislation, C. S., 6363-6372, was to protect the general public from "wild cat" organizers, promoters and their agents, whether foreign or domestic, preying upon an unsuspecting and confiding public by selling "blue-sky stock," without obtaining license and giving bond. *S. v. Agey,* 171 N. C., p. 831; *Bank v. Felton,* 188 N. C., p. 384; *Phosphate Co. v. Johnson,* 188 N. C., 419.

It is a matter of common knowledge that millions of dollars were lost in this State through these organizers, promoters and their agents— men and women made homeless by investing in worthless stocks and bonds, savings of a lifetime in many cases swept away, financial wreckage and ruin following the wake of these irresponsible foreign and domestic corporations that sold nothing for something, the honor of men dealing in such fraudulent schemes smirched and destroyed. Often as an inducement and bait, large dividends were offered and guaranteed. The intent of the statute, under the police power of the State, was to protect the people of the State from this kind of fraud and imposition. The police power of a state is broad and comprehensive. It is elastic so that the governmental control may be adequate to meet changing social, economic and political conditions. Under the U. S. Constitution the police power has been left to the states—in fact it is inherent in the states. Each state has the power to regulate the relative rights and duties of all persons, individuals and corporations within its jurisdiction for the public convenience, welfare and good—for public health, public morals and public safety. The only limit is that no law shall be enacted repugnant to the Constitution of the United States or the State. *Durham v. Cotton Mills,* 141 N. C., p. 615; *Shelby v. Power Co.,* 155 N. C., p. 196; *Shields v. Harris,* 190 N. C., 527; *Moore v. Greensboro, ante,* p. 592; 6 R. C. L., sec. 188-190.

It is well settled law in this State and elsewhere that the states under the police power, in matters of this kind, have the power to pass an act like the one attacked in this case, and it does not violate the Fourteenth

Amendment of the Constitution of the United States or any constitutional provision of this State. The Legislature has an unquestioned right to require an examination and certificate as to the competency of persons desiring to practice medicine or exercise other callings affecting the public, requiring skill and proficiency. *S. v. Call,* 121 N. C., p. 643. To the same effect persons desiring to practice law, to be druggists, pilots, engineers or exercise other callings, whether skilled trades or professions affecting the public and which requires skill and proficiency. *S. v. Call, supra,* p. 646. The Legislature can authorize municipalities and counties to require persons to be vaccinated. *S. v. Hay,* 126 N. C., 999. The examination as to dentists. *S. v. Hicks,* 143 N. C., p. 689. Also examination State Board of Accountancy. *S. v. Scott,* 182 N. C., p. 880; *Provision Co. v. Daves,* 190 N. C., at pp. 13, 14, 15.

Under C. S., 6372, no agent can do business for any individual, corporation or partnership licensed under C. S., 6363 in the State unless license is issued by the Insurance Commissioner. *"The license shall issue only upon the filing with the Insurance Commissioner by such agent of a bond in the sum of $1,000 with such conditions and sureties as may be required and approved by the insurance commissioner."*

Wyatt Johnson Heflin, Edward G. Mathews and Clarence Wilmot Rawlings all entered into separate bonds, each in the sum of $1,000, to be paid to the State of North Carolina, in compliance with section 6372, as agent to sell in the State stocks, bonds, etc., for Bailey Bros. The conditions of each of the bonds were: "Now, therefore, if the above bounden (setting forth name) shall well and truly perform all the requirements of the aforesaid law during the period for which he shall be licensed from time to time as provided in above-cited law, and the said Insurance Commissioner of North Carolina shall be satisfied that the stocks, bonds or other securities sold or offered for sale by the said (setting forth name) are in all respects valid and proper investments for the citizens of North Carolina, and that the said (setting forth name) has not been guilty of fraud or misrepresentation in the sale of said stock, bonds or other obligations, then this bond to be null and void; otherwise, in full force and effect." Each bond was signed by defendant Fidelity and Deposit Company of Maryland as surety.

. The bond in controversy was made to the State of North Carolina and the statute provided that the Insurance Commissioner could require "conditions and sureties," and these were put in the bonds under the statute. Defendant now contends, after signing the bonds as surety, that the Insurance Commissioner had no right to put in the conditions. The provision is to the effect that the bond was enforceable if the agent was guilty of fraud or misrepresentation in the sale of any stock, bonds

or other obligations. We think the bond was made for the benefit of one who was defrauded by the agent. The bond was made for the protection of those who purchased from the agent and that the agent would not be guilty of fraud or misrepresentation. *Schofield v. Bacon, ante,* 253. Under the police power of the State, the authority given the Insurance Commissioner was valid.

In *S. v. Hodges,* 180 N. C., p. 751, the defendant was indicted for the violation of the rules and regulations adopted by the State Board of Agriculture to prevent the infection of sound cattle from other cattle infected with tick fever and to cure those already tainted with the germ. The method was to dip in "vats" containing an improved solution (arsenical) which would destroy and eradicate the tick. The Legislature gave the power to the Secretary of Agriculture to make rules and regulations to stamp out infectious or contagious diseases among live stock. Any person violating such regulations, a right of civil action was given to the person injured, and it was also made a misdemeanor. This was held constitutional and the decision cited and approved at this term in *S. v. Maultsby, ante,* 482. All the counties in the State are now under tick eradication legislation and the holding of these acts within the police power has made a marked improvement in promoting better milk and beef cattle, a matter of untold benefit to the State.

It will be noted that a violation was made a misdemeanor and the right of civil action given to any one injured. Surely it will not be contended that the criminal aspect is constitutional and a civil action cannot be maintained under the police power of the State.

We think the action properly instituted: "State of North Carolina *ex rel.* W. D. Smith." It is brought by analogy to actions on official bonds. Although the statute gives the right in default on official bonds to bring the action in the name of the State, yet the Insurance Commissioner, having the right to require this kind of bond made payable to the State for the benefit of one defrauded, we think the action was properly brought. If this was not so, a wrong would be done for which there was no remedy.

The plaintiff in the complaint alleges fully the fraud and misrepresentation by which the three agents obtained $4,000 from him. The allegations of the complaint make out a cause of fraud and misrepresentation. The demurrer of the defendant admits as true the allegations of the complaint.

The complaint is not demurrable for a misjoinder of both parties and causes of action. *Roberts v. Mfg. Co.,* 181 N. C., 204. There are only two parties to this action—plaintiff and defendant, though three separate contracts are sued upon, which may be properly joined in the same complaint. As to whether the agents are necessary parties, does not arise on demurrer.

The defendant surety company signed these bonds, received the premium, and now, after allegations of fraud and misrepresentations, are charged against the principals in the bond and suit brought on the bonds by the party injured, defendant is taking the position that the Insurance Commissioner had no authority to take such a bond, although with full knowledge of the law it signed the bonds as surety. There is no uncertainty or ambiguity about the bond. If the bonds were not to protect those who were defrauded in the purchase of the stocks, etc., for what purpose were the bonds given? The defendant surety company received premiums on and signed what it now contends are illegal bonds. It received the benefits of the premiums, it ought to bear the burden it assumed. There is no reason in law or morals why the defendant surety company should not be held to its solemn contract.

For the reasons given, the demurrer is

Reversed.