STATE *ex rel.* MUNICIPAL BOND & INVESTMENT CO., INC., v. W. V. KNOTT, J. M. LEE and CARY D. LANDIS, as and constituting the Florida Securities Commission.

154 So. 143.
Opinion Filed March 2, 1934.
Petition for Rehearing Denied March 20, 1934.

*Butt & Akeridge,* for Relator;

*Cary D. Landis,* Attorney General, and *Robert J. Pleus,* Assistant, for Respondents.

DAVIS, C. J.—Section 11 of Chapter 14899, Laws of Florida, Acts of 1931, was modified by Chapter 16174, Acts of 1933. The bond provision of said Section 11 of the original Act was held unconstitutional in Riley v. Sweat, 110 Fla. 362, 149 Sou. Rep. 48. The object of the 1933 statute was to cure the unconstitutional feature pointed out in the case just cited.

In this case relator is seeking a peremptory writ of mandamus requiring the respondents, W. V. Knott, State Treasurer, J. M. Lee, State Comptroller, and Cary D. Landis, Attorney General, as *ex officio* members of the Florida Securities Commission, to register relator as a security dealer in that class of securities described in Section 3 of Chapter 16174, Acts of 1933. Relator has not given the bond required by Section 11 of the Act, and its contention is that the bond requirement the statute imposes, is unconstitutional as a condition precedent to registration. In this connection it is alleged that relator has made exhaustive

and diligent effort to secure the statutory bond, and having failed to secure said bond, is entitled to be registered as a dealer in securities in that it is being denied registration at this time solely because of its failure to give the bond required by the 1933 law, and not for any other non-compliance with the Act. The alternative writ has been met by the respondents by a motion to quash. Hence the question to be decided by the Court is whether or not the 1933 Act is subject to the same constitutional objection that this Court has heretofore found to exist in the 1931 Act.

Chapter 14899, Acts of 1931, required dealers in certain enumerated securities to post a bond in the sum of five thousand dollars, conditioned upon the faithful compliance with the provisions of said Act by the dealer, and all salesmen registered by him while acting for him. Said bond was required to be executed by an authorized surety company. No other method of giving security was provided for. In Riley v. Sweat, *supra,* this Court held the bond requirement of the 1931 Act unconstitutional, but at the same time recognized the principle that it was within the State's police power to regulate the business of security dealers, and that in order to effectuate such regulations when made, that it was likewise within the power of the Legislature to require of security dealers a license and demonstration of good repute and qualification, together with an irrevocable consent to the service of process upon a designated official.

To take care of the objections found as to the bond requirement of the 1931 Act, Chapter 16174, Acts of 1933, enacted that the bond required of dealers in certain securities under Section 11 of Chapter 14889, *supra,* should be in a particularly designated form, the substantial provisions of which are (1) a maximum penal sum and attendant liability limited to that sum which was fixed at

$5,000.00; (2) provision that before there should be any right of action against the principal or surety, within the period of one year after termination of the bond, notice of claim must have been given to the principal and surety, same being prescribed to be a condition precedent; (3) liability of surety limited to cases of actual fraud or dishonesty in the sales of securities; (4) cancellation of bond at option of principal or surety upon giving of sixty days' notice to Securities Commission, after which cancellation no further obligation may be incurred on the bond; (5) bond to remain in force and effect for one year only unless sooner cancelled; (6) bond to be executed by a surety company authorized to do business in this State.

Under Section 2 of said Chapter 16174, *supra,* in lieu of the bond, an applicant may, if he so desires, deposit with the Florida Securities Commission, U. S. Government bonds, cash or other securities satisfactory to the Commission in the sum of $5,000.00, attended by the same liability as upon the bond.

The power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the State to enact laws for the protection of the lives, health, morals, and comfort and general welfare of the people and is paramount to the right of any person to engage in a particular business or calling. This is true although the business or calling engaged in be admittedly legitimate, and is not of such character that it may be entirely forbidden as a calling or business *per se* inimical to the general welfare.

The question whether or not a particular legislative Act enacted under the police power for the purpose of regulating a business, trade or profession is valid, depends almost entirely on whether or not the legislation is addressed to a legislative end. If the measure of regulation attempted

to be undertaken is reasonable and appropriate to a legitimate end for the protection of a basic interest of society, and is not a mere subterfuge in the form of a law designed to bring about some unjust advantage to particular individuals to the prejudice of the general rights of others in the same calling similarly situated, the courts are not authorized to declare the regulations prescribed invalid, although they may strongly disapprove of the wisdom and policy of the measures adopted, or may deem the regulations prescribed foolish or unwise.

The economic interests of a State may justify the exercise of its continuing and dominant protective police power for the promotion of the general welfare, notwithstanding interference with lawful callings and even contracts. Home Building & Loan Association v. Blaisdell, ......... U. S. ........., 54 Sup. Ct. Rep. 231, 78 L. Ed. 255 (opinion filed January 8, 1934). And this has been held to apply to the business of selling securities. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. Rep. 217, 61 L. Ed. 480; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 Sup. Ct. Rep. 224, 61 L. Ed. 493; Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 Sup. Ct. Rep. 227, 61 L. Ed. 498; Riley v. Sweat (Fla.), *supra.*

A careful analysis of the 1933 Act fails to demonstrate that either the character or amount of the security required by the law in question is unreasonable *per se*. No doubt it is burdensome and indeed utterly beyond the capacity of some security dealers to give. But the requirement of bond or other adequate security as a condition precedent to engaging in a business like that of a security dealer is in the interest of the public which, as the Court judicially knows from reported decisions of many jurisdictions, has oftimes been victimized by unscrupulous dealers in stocks and bonds, so much so, that the matter has reecently been made

one for national consideration by the President of the United States and the houses of Congress. See Securities Act of 1933, Act of May 27, 1933, c. 38, 48 Stats. United States.

Where a security requirement is made a condition precedent to one's engaging in a business involving practices which common experience has demonstrated have been often used by evil minded individuals for the purpose of defrauding the public, the bond or security requirement, if reasonable in and of itself, and made a legitimate part of a regulatory scheme designed to discourage acts and conduct injurious to the public welfare, and not simply imposed as a burden in the nature of a penalty to be suffered for the mere undertaking to engage in the business, is not unconstitutional as being beyond the scope of the State's police power.

The police power of the State is broad enough to sustain the setting up of a protective device in the nature of an anticipatory and preventive safeguard against wrongs which after their commission, are undeniably within the police power of the State to punish. Walsh v. Standard Accident Insurance Co., 215 Cal. 587, 12 Pac. (2nd) 16. And more than one case has been decided wherein recoveries on securities exacted under this rule as a scheme for regulating the business of security dealer, have been sustained. See Smith v. Fidelity & Deposit Co. of Baltimore, Md., 191 N. C. 643, 132 S. E. Rep. 792; Witter v. Massachusetts Bonding & Ins. Co., 215 Iowa 1322, 247 N. W. Rep. 831. Compare: People v. Beekman & Co., 347 Ill. 92, 179 N. E. Rep. 435, where an Act was declared unconstitutional as to a bond requirement because of an unlawful delegation of the legislative power concerning it, but otherwise apparently recognized as a valid requirement when the amount

and character of it is determined by the Legislature or pursuant to a reasonable standard set up by it.

An examination of the title to Chapter 16174, Acts of 1933, shows a substantial compliance with the purpose and intent of Section 16, Article III, of the State Constitution which provides that each Act of the Legislature shall embrace but one subject and matter properly connected therewith, which *subject* shall be briefly expressed in the title. Only when the title to an Act of the Legislature is deceptive or misleading, as well as inartificial as an expression of the subject of the Act, can a statute be declared unconstitutional on account of a violation of Section 16 of Article III.

In the present case the title to the Act is as follows:

"An Act Relating to the Sale or Distribution of Securities and to the Powers and Duties of the Securities Commission Created Under Chapter 14899, Laws of Florida, Acts of 1931, Entitled 'An Act Regulating the Sale of Securities and to Make Uniform the Law Relating Thereto, and to Repeal Statutes Which are Inconsistent Herewith'; Providing the Form of Surety Bond Required of Dealers in Such Securities, and Authorizing the Acceptance of Certain Deposits in Lieu of Such Bonds; Providing Civil Remedies for Purchasers of Securities in This State and Extending the Jurisdiction of the State Courts with Reference Thereto; and Repealing All Laws and Parts of Laws in Conflict Herewith."

The main purpose of requiring the subject of an Act to be briefly expressed in its title is not so much to inform members of the Legislature of its contents (since they are supposed to apprise themselves not only of the subject as expressed in the title, but as to the contents of the body of the Act as well), but to apprise the citizens of the State of what their representatives in the Legislature are about to

enact as a part of the law of the land, so that the people may exercise their constitutional right of petition and remonstrance to their representatives if the object to which it is proposed, or to the Governor if what is proposed, is passed over their protest, to the Legislature.

It can scarcely be said in this case that the title of Chapter 16174, *supra,* when tested in the light of notice to the public of what was proposed to be accomplished by it, falls short of being amply sufficient for that purpose. So the Act cannot be declared unconstitutional on that score.

We hold therefore that the bond and security requirements of Chapter 16174, Acts of 1933, when considered in relation to Chapter 14899, Acts of 1931, are addressed to a legitimate end; that they are not unreasonable in themselves as a means directed to that end, but as parts of a general regulatory scheme designed to supervise and control the business of security dealers for the protection of the public against impositions and fraud, such requirements of the 1933 Act are not amenable to the criticism that they are for the mere advantage of particular individuals of sufficient wealth and capacity to meet the burdens imposed. On the contrary, it may be said that it appears to be reasonably necessary for the protection of a basic interest of society to guard in advance against the temptation of dealers and their agents to perpetrate frauds in the sale and offering for sale of securities that such requirement be exacted as a condition to engaging in the business at all. So holding, it follows that the alternative writ of mandamus must be quashed and the proceeding dismissed at relator's cost, and it is so ordered.

Alternative writ quashed and proceeding dismissed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs in the conclusion.