Challenged on this appeal on various grounds is the constitutionality of Florida's "fair trade law" authorizing contracts establishing resale prices on commodities bearing "trade-marks, names or brands", which is Chapter 19201, Acts of 1939, Laws of Florida, or Sections 541.01 to 541.08, inclusive, F.S.A.
The Act is viz.:
"541.01. Short title of chapter. This chapter may be known and cited as the `Florida fair trade law'.
"541.02. Definition of terms used in chapter. The following terms, as used in this chapter, are defined as follows:
"(1) `Commodity' means any subject of commerce.
"(2) `Producer' means any grower, baker, maker, manufacturer, bottler, packer, converter, processor or publisher.
"(3) `Wholesaler' means any person selling a commodity, other than a producer or retailer. *Page 389 
"(4) `Retailer' means any person selling a commodity to consumers for use.
"541.03. Contract may govern price of sale or resale. No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced and distributed by others shall be deemed in violation of any law of the State of Florida by reason of any of the following provisions which may be contained in such contract:
"(1) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller.
"(2) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller.
"(3) That the seller will not sell such commodity:
"(a) To any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or
"(b) To any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price.
"541.04. Inducements to evade contract restrictions prohibited. For the purpose of preventing evasion of the resale price restrictions imposed in respect of any commodity by any contract entered into pursuant to the provisions of this chapter (except to the extent authorized by said contract):
"(1) The offering or giving of any article of value in connection with the sale of such commodity.
"(2) The offering or the making of any concession of any kind whatsoever (whether by the giving of coupons or otherwise) in connection with any such sale; or
"(3) The sale or offering for sale of such commodity in combination with any other commodity, shall be a violation of such resale price restrictions, for which the remedies prescribed by § 541.07 shall be available.
"541.05. Owner alone may establish resale price. No minimum resale price shall be established for any commodity, under any contract entered into pursuant to the provision of this chapter, by any person other than the owner of the trade-mark, brand or name used in connection with such commodity or distributor specifically authorized to establish said price by the owner of such trade-mark, brand or name.
"541.06. Exceptions. No contract containing any of the provisions enumerated in § 541.03 shall preclude the resale of any commodity covered thereby without reference to such contract in the following cases:
"(1) In closing out the owner's stock for the bona fide purpose of discontinuing dealing in any such commodity and when plain notice of the fact is given to the public; provided the owner of such stock shall give to the producer or distributor of such commodity prompt and reasonable notice in writing of his intention to close out said stock, and an opportunity to purchase such stock at the original invoice price.
"(2) When the goods are altered, secondhand, damaged, defaced or deteriorated and plain notice of the fact is given to the public in the advertisement and sale thereof, such notice to be conspicuously displayed in all advertisements and to be affixed to the commodity;
"(3) By any officer acting under an order of court.
"541.07. Suit at law for violation of chapter. Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, and whether the particular lot of such commodity so advertised, offered for sale or *Page 390 
sold, was or was not at any time sold to a party that stipulated the price of such commodity under the provisions of this chapter is unfair competition and is actionable at the suit of any person damaged thereby.
"541.08. Law not applicable to certain contracts. This chapter shall not apply to any contract or agreement between or among producers or distributors or (except as provided in subsection (3) of § 541.03 between or among wholesalers, or between or among retailers, as to sale or resale prices."
The bill of complaint alleged, in substance, that the Continental Distilling Corporation was engaged in the business of distilling and selling intoxicating liquors in the State of Florida and other States of the Union, and one of its products was trade-marked as "Philadelphia Blended Whiskey". It is alleged further that in the conduct of its business, the plaintiff under the provisions of the aforesaid Act entered into two contracts with certain retailers in Jacksonville, Florida, by the terms whereof the trade-marked product of the plaintiff known as "Philadelphia Blended Whiskey" should be retailed in the State of Florida at the price of $4.10 per one-fifth gallon. The plaintiff alleged that it notified the Liquor Stores, Inc., of the execution and existence of the two contracts wherein the retail price of the trade-marked product "Philadelphia Blended Whiskey" was fixed at $4.10 per one-fifth gallon, but the defendant Liquor Stores, Inc., continued to advertise and sell the trade-marked whiskey supra at $3.49, being a sum less than $4.10 per one-fifth gallon, contrary to the two retail contracts which fixed the retail price under the "fair trade law".
One of the petitioners here applied for and, by appropriate order, was permitted or allowed to file in the court below such a pleading in the cause as any other defendant and pursuant thereto the Webb's City, Inc., filed an answer to the bill of complaint and also a motion to dismiss on several grounds. Likewise the Liquor Stores, Inc., filed a motion to dismiss and the cause was heard by the Chancellor below on the motions of the defendant to dismiss directed to the bill of complaint. Extensive and able arguments were presented to the Chancellor on the issues made by the pleadings and thereafter an order was entered overruling the motions to dismiss and the effect thereof was to sustain the constitutionality of Sections 541.01 to 541.08, inclusive, F.S.A.
The questions posed here for adjudication are viz.:
1. Where the Legislature enacts a law in the exercise of its police power, in order to be valid and constitutional, must not such statute bear a reasonable or rational relation to the protection of the public health, morals, safety or welfare?
2. Where, in the exercise of its police power, the Legislature enacts a law which authorizes arbitrary individual restraint over ordinary articles of commerce and trade, including all necessities of life, is not such statute detrimental to the public welfare, and therefore, outside and beyond the power of the Legislature to enact?
3. Is Chapter 541, F.S.A., and more particularly Sections 541.03 and 541.07 violative of and repugnant to Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida?
4. Is Chapter 541, F.S.A., and more particularly Sections 541.03 and 541.07, violative of and repugnant to Section 1, Article III, of the Constitution of Florida?
5. Is the "non-signer clause" provided for by Section 541.07, F.S.A., violative of and repugnant to the Miller-Tydings Amendment to the Federal Sherman Anti-Trust Act?
6. Is the Florida Fair Trade Act in violation of the Miller-Tydings Amendment to the Federal Sherman Anti-Trust Act relating to contracts between wholesalers and retailers?
7. Are the instruments attached to the bill of complaint and referred to as `contracts' sufficient to support plaintiff's cause of action?
Attached to the bill of complaint and made a part thereof is a contract dated September 6, 1947, and signed by the Continental Distilling Corporation, called the "owner", and Avondale Liquor Wine Store, *Page 391 
called the "retailer". One of the provisions thereof is that the contract "shall continue in full force and effect until terminated by either party after notice * * *, the retailer agrees not to sell or offer for sale in the State of Florida any beverages which bear, or the labels or containers of which bear, any trade-mark, brand name, insignia or the name of the said Continental Distilling Corporation, at other than the resale prices thereof to the consumers in Florida or at any other than the terms and conditions of such resales, from time to time designated by the owner, the owner shall have the right at all times, and from time to time revise or change any and all such retail prices, and terms and condition of such resale, any such revision or change to become effective on such date as shall be specified by owner * * *." A price list of the plaintiff's whiskeys as agreed to by the parties is attached to the bill of complaint. A second contract of similar import signed by the plaintiff as owner and Barron's Bar of 382 Park Street, Jacksonville, Florida, as the retailer with price list attached is attached to and made a part of the bill of complaint.
It is contended under questions 1 and 2 supra that Florida's "fair trade law" cannot be sustained under the police power of the Florida Constitution. It is fundamental in statutory construction that the intent of the Legislature is to be found in the language of the Act and the intention sustained if found to be with the constitutional limitations, as courts have no power to legislate. Curry v. Lehman, 55 Fla. 847, 47 So. 18. The police power of a State embraces regulations designed to promote the public convenience or general prosperity or the public welfare. Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 So. 377, 20 Ann.Cas. 1047. It is argued that under the terms of the Act arbitrary power is granted to fix the minimum resale price "on all necessities of life". The answer to the contention is found in Section 541.03, F.S.A., and is viz.: "No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or distributor of such commodity and which commodity is in free and open competition with commodities of the same general class produced and distributed by others". It is to be observed that contracts are restricted to brands and trade-marked products then in free and open competition with similar products.
Whether a particular Act enacted under the police power for the purpose of regulating a business, trade or profession is valid depends on whether or not the legislation is addressed to a legitimate end. If the measure of regulation attempted to be undertaken is reasonable and appropriate to a legitimate end for the protection of a basic industry of society and is not a subterfuge in the form of law designed to bring about some unjust advantage to particular individuals to the prejudice of the general rights of others in the same calling similarly situated, the courts have no authority to declare the regulation prescribed invalid, although they may strongly disapprove of the wisdom or policy of the measure adopted or may deem the regulation prescribed foolish or unwise. State ex rel. Municipal Bond 
Investment Co. v. Knott, 114 Fla. 120, 154 So. 143.
The economic interest of a state may justify the exercise of its continuing and dominant protective police power for the promotion of the general welfare, notwithstanding interference with lawful callings and even contracts. See State ex rel. Municipal Bond Investment Co. v. Knott, supra. It is generally recognized that the police power is an inherent attribute of sovereignty and exists without any reservation in the Constitution, being founded on the duty of the state to protect its citizens and provide for the safety and good of society. Laws enacted under the police power of a sovereign state for the purpose of regulation may in some instances be harsh and oppressive without contravening constitutional limitations. The police power is no longer limited to measures designed to protect life, safety, health and the morals of the citizens, but extends to measures designed to promote the public convenience and general prosperity and includes economic measures regulating competition. *Page 392 
Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469.
Under questions 1 and 2 of petitioners' brief arguments are presented on certain facts set out in the answer of Webb's City, Inc., and the contention is made that the terms and provisions of the Act are arbitrary and unreasonable and have no reasonable relation to the public safety, welfare, morals or health of the people of the sovereign State of Florida and the Legislature was without constitutional authority to enact the "fair trade" act. Counsel for respondent filed a motion to strike from petitioners' brief certain facts so set out in the answer and which were not considered by the court below at the time the challenged order was entered. This Court entered its order of denial prior to hearing oral arguments on the merits. It now appears by the record that the Chancellor below heard the cause and made its order on the respective motions to dismiss filed by Liquor Stores, Inc., and Webb's City, Inc., and the facts so set out were not considered. We fail to find merit in this assignment.
The next contention is that Sections 541.01 to 541.08, inclusive, supra, and particularly Sections 541.03 and 541.07 are in conflict with and in derogation of Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida and each thereof is repugnant to and in violation of Section 1 of Article III of the Constitution of Florida.
Section 1 of the Declaration of Rights is viz.: "Section 1. Personal rights. All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety."
Section 12 of the Declaration of Rights is viz.: "Section 12. Double jeopardy; compelling testimony; due process of law; eminent domain. No person shall be subject to be twice put in jeopardy for the same offence, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken without just compensation."
Section 1 of Article III of the Constitution is viz.: "Section 1. Houses of legislature; meeting place. The Legislative authority of this State shall be vested in a Senate and a House of Representatives, which shall be designated. The Legislature of the State of Florida and the sessions thereof shall be held at the seat of government of the State."
Arguments, in part, offered in support of this assignment are: (1) it deprives the retailers of the right to fix the prices of their commodities to the purchasing public; (2) the consuming public, by the terms of the Act, is deprived of the right to purchase the necessities at the lowest possible price; (3) the Act compels the purchasing public to pay prices fixed by the producer or manufacturer; (4) the Act authorizes arbitrary price levels fixed by the producer or manufacturer and in so doing confers legislative functions and destroys free and open competition; (5) minimum resale prices on articles are fixed without regard to cost or reasonableness and without any hearing; (6) the owner of labeled or branded articles may enter into a contract with a Florida retailer for the sale of the article at a fixed price and the contract becomes binding on all other retailers in Florida of the branded articles and this power infringes on the liberty of contract; (7) individual initiative is destroyed — approval is given to the lazy and unprogressive retailer — while the thrifty, alert and progressive retailer is penalized and the general public is deprived of cheaper prices and not benefitted; (8) Section 541.07, F.S.A., authorizes a unilateral contract and the terms thereof made binding on all non-signers retailing the branded or trade-marked articles; (9) the provisions of the Act binding the non-signing retailer is unconstitutional; (10) the producer or manufacturer of trade-marked articles by the Act is permitted to determine what is in open and free competition, to the public detriment; (11) the Act grants to the producer of such articles delegated authority to fix the retail price thereof; (12) it is a price-fixing Act *Page 393 
and not a "fair trade" Act; (13) it is not in the interest of the public to fix the retail prices on branded articles but promotes the interest of the producer and manufacturer; (14) the Act is void because it fails to provide for a notice and hearing prior to fixing the retail price on the trade-marked article; (15) the Act discriminates between the retail signer of the retail contract and the non-signer, who is bound thereby under the terms of the Act. Authorities are cited to sustain many of the arguments supra.
It will be observed that the Act limits contracts to the sale or resale of commodities which bear, or the label or container of which bear trade-marks, brands or the name of producer or distributor of such commodities, which commodities are in free and open competition with commodities of the same general class produced and distributed by others. These contracts are authorized only between the producer or wholesaler and the retailer, provided the commodity is found in free and open competition with other commodities of the same general class. The Act provides for vertical contracts only, as distinguished from horizontal ones, and competition in this manner is continuously maintained among the producers or wholesalers. Contracts cannot under the Act be lawfully made between producers of trade-marked articles.
Our study discloses that all the States of the Union, since 1931, have adopted "fair trade acts", except the States of Vermont, Texas and Missouri. The courts of last resort of some fifteen States have sustained the respective Acts. Various questions were presented and argued before the courts of last resort where the respective Acts have been considered. It is difficult for us to close our eyes to rulings of courts of other jurisdictions when considering the merits of the arguments presented in the case at bar. The economic philosophy motivating the Florida Legislature in the enactment of the challenged Act is fully sustained as being within the police power of a sovereign state. Courts are not permitted to strike down a statute because it fails to square with their individual social or economic philosophies or theories, neither can we consider the question of public policy, wisdom or lack of wisdom or other motives which may address themselves to the legislative department of our government. The philosophy or predilection of Judges as to what the law should be in such instances is nothing more than an idle gesture.
The able arguments presented by counsel for petitioners in support of the unconstitutionality of the Act are fully answered by the following authorities: Seagram-Distillers Corp. v. Old Dearborn Distilling Co., 363 Ill. 610, 2 N.E.2d 940; Joseph Triner Corp. v. McNeil, 363 Ill. 559, 2 N.E.2d 929, 104 A.L.R. 1435; Max Factor Co. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177; Ely Lilly Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308, and Annotations on pages 1335 to 1367; Goldsmith etc. v. Mead Johnson Co., 176 Md. 682, 7 A.2d 176, 125 A.L.R. 1339; Johnson Johnson v. Weissbard Bros., 121 N.J. Eq. 585,191 A. 873; Bourjois Sales Corp. v. Dorfman, 273 N.Y. 167, 77 N.E.2d 30, 110 A.L.R. 1411; Pro-Phy-Lac-Tic Brush Co. v. Vidgoff, Oregon Circuit Ct. for the County of Multnomah, Oct. 19, 1939; Weco Products Co. v. Reed Drug Co., 225 Wis. 474, 274 N.W. 426; Sears v. Western Thrift Stores of Olympia, Inc., 10 Wn.2d 372, 116 P.2d 756; Fisher, Inc. v. Canfield, Colorado Dist. Ct. for the City County of Denver, No. A28837, Div. 2; Gray, Ltd., v. Johnson Wholesale Perfume Co., Inc., D.C., 45 F. Supp. 744; Miles Laboratories, Inc. v. Seignious, 30 F. Supp. 549; Miles Laboratories, Inc., v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292; and Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303; 52 Am.Jur. pp. 643-659.
The next contention is that Florida's "fair trade law" conflicts with and is in derogation of Section 1 of the Miller-Tydings Amendment of the Sherman Anti-Trust Act. The pertinent portions thereof quoted in petitioners' brief are viz.:
"`Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: Provided, that nothing herein contained *Page 394 
shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand or name of the producer or distributor of such commodity, and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 5, as amended and supplemented, of the act entitled "An Act to create a Federal Trade Commission, to define its powers and duties and for other purposes" approved September 26, 1914: Provided further, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers or between persons, firms, or corporations in competition with each other.'"
Arguments in support of the above contention have been weighed and considered. It was clearly the intention of Congress by the enactment of the above Amendment to remove doubts and uncertainties as to the power of a sovereign state to enact "fair trade laws" when functioning under the police power of their respective constitutions. It is in the nature of a legislative interpretation of the Sherman Anti-Trust Act. See Schill v. Remington Putnam Book Co., 179 Md. 83, 17 A.2d 175, 22 A.2d 128. Pepsodent Co. v. Krauss and Ely Lilly Co. v. Saunders, supra.
The seventh question posed here by petitioners' counsel is viz.: "Are the instruments attached to the bill of complaint and referred to as `contacts' sufficient to support plaintiff's cause of action?" After hearing arguments on the motions to dismiss addressed to the bill of complaint, it was the view of the Chancellor that the contracts, by appropriate allegations made a part of the bill, were prima facie sufficient on the then state of the pleadings. Emphasis, during the course of the oral arguments here, was placed on the illegality of the contracts because of the lack of a sufficient showing on both (a) lawful consideration, and (b) mutuality. The door on these two points was not forever closed against the petitioners by the entry of the challenged order. It is generally recognized under our system of government that the use of property and contractual agreements are usually matters of private concern, but the liberty of contract guaranteed by the Constitution is freedom from arbitrary restraints, and not immunity from reasonable regulation to safeguard the public interest by a sovereign state when legislating under its police power. Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 242, 59 L.Ed. 628, L.R.A. 1915F, 829.
I would deny the petition for a writ of interlocutory certiorari. *Page 450