317 So.2d 838 (1975)
Frederick H. HEINZMAN, As Director of the Department of Environmental Control, County of Sarasota, Florida, et al., Appellants,
v.
U.S. HOME OF FLORIDA, INC., a Florida Corporation, Appellee.
No. 74-1030.
District Court of Appeal of Florida, Second District.
August 29, 1975.
*839 Richard E. Nelson, of Nelson, Stinnett, Surfus, Payne, Hesse & Cyril, Sarasota, for appellants.
John Patterson, of Icard, Merrill, Cullis, Timm & Furen, Sarasota, for appellee.
BOARDMAN, Judge.
This is an appeal from a final judgment granting a peremptory writ of mandamus against the appellants, constituting the Board of County Commissioners of Sarasota County (County). The writ directed the County, through the proper administrative personnel, to accept for processing the application of the appellee, U.S. Homes, for 73 applications for construction in Sarasota County for 95 single family, duplex and multifamily dwellings in the South Gate area.
Appellants were respondents in the trial court and the appellee was the relator. The factual background shows that South Gate and Gulf Gate are two large contiguous subdivision developments situate in Sarasota County. Florida Cities Water Company (Florida Cities), not a party to this action, was providing sanitary sewer service to both the South Gate and Gulf Gate areas pursuant to an exclusive franchise agreement entered into with the *840 County. The sewer service to each of said areas was provided by a separate treatment plant operating independently of each other. In 1965 and 1967, First Development Corporation of America (FDC), which corporation was subsequently acquired by and merged into appellee, entered into contracts with Florida Cities. In these contracts it was agreed that Florida Cities, as an exclusive franchisee of the County, would provide the demands of sanitary sewer service within certain property then owned by FDC situate in the South Gate area. According to the record, both of said parties performed their obligations under the aforesaid contracts until February 7, 1974. On this date the County considered a proposal submitted by Florida Cities to interconnect its South Gate and Gulf Gate treatment plants.[1] This interconnect was designed to divert a portion of the load on the Gulf Gate plant, which was operating at capacity, to the South Gate plant, which had not yet reached its capacity. The interconnect, when completed, would allow Florida Cities to provide service to all the proposed 754 dwelling units in the Gulf Gate area which had been issued conditional[2] and unconditional building permits.[3] Florida Cities' proposal to interconnect the two sewerage systems was approved by resolution of the County on the same day, i.e., February 7, 1974.
The interconnect was completed about April 17, 1974. It appears that the County passed and adopted Ordinance 74-12 on April 16, 1974, which found in Section 1 that the interconnect would provide capacity to serve the 754 units which had been issued building permits in the Gulf Gate area without creating a health hazard or potential health hazard. Section 2 authorized the issuance of certificates of occupancy to the 754 dwelling units and to all those dwelling units in the South Gate treatment plant area which had also been issued building permits. The connection of the 754 dwelling units in the Gulf Gate area, together with the connection of the units in the South Gate area, would bring the interconnected Gulf Gate and South Gate treatment plants to capacity. Section 3 thereof prohibited the issuance of any further building permits requiring sewer service from either plant until Florida Cities' committed expansion facility in the South Gate and Gulf Gate areas was completed. The date of completion was scheduled for December 31, 1974. However, on March 13, 1975, the date of oral argument before this court, counsel for the respective parties indicated that the project had not yet been completed.
On April 29, 1974, appellee submitted 73 applications for construction of 95 dwelling units in the South Gate area. All but two of the applications were denied. On May 6, 1974, appellee filed its petition for issuance of alternative writ of mandamus alleging that the approval of the interconnect and adoption of Ordinance 74-12 unlawfully impaired appellee's contractual *841 rights under its sewer service contracts with Florida Cities; were arbitrary, capricious and discriminatory; had no reasonable relationship to valid public purposes; were in violation of previously adopted county ordinances; were in violation of Florida Cities' franchise agreements; and were unconstitutional.
The trial court issued the amended alternative writ of mandamus directing the County to show cause or answer on or before May 24, 1974, why appellee's application for issuance of the 73 building permits submitted on April 29, should not be granted. The County did not file written answer to the amended alternative writ of mandamus, but counsel for the parties, prior to trial, read into the record the allegations of the writ that were admitted or denied. The case proceeded to trial on June 4, 1974.
The County has raised three points on appeal. Upon review of the record, including approximately 21 exhibits, the briefs and able oral argument, we affirm the ruling of the trial court.
The County contends, and correctly, that Florida Cities initially proposed the interconnect. However, as we interpret and construe the franchise agreement, county approval was necessary in order for Florida Cities to make an installation of the magnitude of the interconnect. Furthermore, the County, by its resolution and order of February 7, 1974, did grant such authority. There is no evidence in the record to support the contention that by proposing the interconnect that Florida Cities intended to breach its sewer service contracts with appellee to provide sanitary sewer service to the South Gate area. On the contrary, there is competent evidence in the record that at all times pertinent, the South Gate Plant was operating below maximum capacity and was functioning in accordance with the county standards for such operation.
There is no real dispute that appellee's application for the issuance of the 73 building permits in the South Gate area could have been processed if not for the action of the County. It was the County officials, after meeting with developers in Gulf Gate, who enlarged and expanded the initial proposal for the interconnect and went further than was intended so that developers holding conditional and unconditional building permits would be guaranteed a sewer connection even though, in many instances, construction had barely begun. At the same time, it had the obvious effect of preventing the issuance of any further building permits in the South Gate area for the reason that with the addition of the Gulf Gate load the South Gate Plant would be operating at its maximum capacity. As a consequence, the Florida Cities'-appellee's contractual rights were impaired in violation of Article I, Section 10 of the Florida and U.S. Constitutions, unless it could be said that Ordinance 74-12, supra, was based upon a legitimate exercise of the police power of the county. See Mahood v. Bessemer Properties, Fla. 1944, 154 Fla. 710, 18 So.2d 775; State v. Knott, Fla. 1934, 154 So. 143.
The trial court found that there was no present or potential health hazard involved, either at the time the application for the building permits was submitted by appellee or at the time of trial. The court's determination that Ordinance 74-12 was unconstitutional as an improper exercise of the police power of the county, bearing no reasonable relationship to public health, safety, morals, or welfare, comes to this court clothed with the presumption of correctness, the burden being upon appellants to show error. None has been demonstrated. The effect of the ordinance and resolution was simply to prefer the landowners at Gulf Gate by allowing them to preempt the remaining sewerage capacity of the South Gate system. Cf. Rabin v. Conner, Fla. 1965, 174 So.2d 721.
*842 The fact that the County may have improvidently issued Gulf Gate building permits in excess of the sewerage capacity of the Gulf Gate Plant cannot be invoked as a reason to deny building permits to appellee in South Gate when the South Gate Plant has the sewerage capacity to supply the South Gate properties. Moreover, the record reflects that the number of conditional permits issued in Gulf Gate far exceeds the 95 permits presently sought by appellee.
Appellants further argue that the trial court erred in failing to grant their motion for rehearing. Appellants premise their argument on County Ordinances Nos. 74-14 and 74-18 passed and adopted after the final hearing, but prior to the rendition of the final judgment. It should be recalled that appellee filed its petition for the amended writ of mandamus on May 6, and the amended alternative writ of mandamus was issued on May 7. The trial took place on June 4 and 5, and final judgment was rendered on July 30. These ordinances direct that no further building permits should be issued in the Florida Cities franchise area until such time as the public water and sewer facilities have the necessary capacity. The County relies on the case of City of Boynton Beach v. Carroll, Fla. App. 4th, 1973, 272 So.2d 171, cert. den. Fla. 1973, 279 So.2d 871, for authority that the law in effect at the time of rendition of judgment controls. However, the Supreme Court in City Co. of City of No. Miami B. v. Trebor Const. Corp., Fla. 1974, 296 So.2d 490, recently discharged a writ of certiorari directed to a decision which had held that the ordinance in effect at the date the suit was filed controlled. The court said:
"... Although there is language in Boynton Beach v. Carroll, supra, to the effect that the law at the time of final determination governs, this must be considered in light of the fact that, in Boynton, the law as of final determination of the suit was the same as the law as of the date of filing of the suit. The decision of the 3d DCA sub judice did not apply the law as of the time of application for a building permit; it applied the law as of the date of filing of the suit, as in Boynton Beach v. Carroll, supra, where the court likewise applied the law as of the date of filing of the suit, albeit by another name. Hence, no conflict appears, thus no jurisdiction here."
Therefore, the trial court properly refused to consider the effect of Ordinances Nos. 74-14 and 74-18. See also Harris v. State ex rel. Webster, 1947, 159 Fla. 195, 31 So.2d 264; Aiken v. E.B. Davis, Inc., 1932, 106 Fla. 675, 143 So. 658.
After oral argument, we received from counsel for appellants an order of the trial court in another action granting a temporary injunction against Florida Cities. We find it has no bearing on the issues now before us in this appeal and does not change or alter our opinion.
Affirmed.
McNULTY, C.J., and GRIMES, J., concur.
NOTES
[1] Prior to this date, the County had initiated proceedings to revoke the sewerage franchise granted Florida Cities. However, the County dismissed, without prejudice, the revocation proceedings in return for Florida Cities commitment to undertake expansion of its sewerage treatment plants in both the Gulf Gate and South Gate areas as shown in resolution and order of the County dated February 7, 1974.
[2] "THIS IS A CONDITIONAL BUILDING PERMIT. All contractors and owners furnishing any material or services pursuant hereto are proceeding at their own risk as a certificate of occupancy will not be issued by the County until the public water and sewer system servicing the property has been certified as being in full compliance with all regulations pertaining to its use, operation and capacity. The contractor and the owner by acceptance of this conditional building permit do hereby waive any and all claims or causes of action which they may have against the County or any officer or employee thereof by reason of the County's refusal to permit any person from occupying the concerned premises prior to the issuance of a certificate of occupancy."
[3] Ordinance 73-30, adopted November 29, 1973, prohibited any new connections to the Florida Cities sewer system while that system was at capacity.