# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2025-0335
Lower Tribunal No. 2024-CA-002674

_____

LEE COUNTY,

Appellant,

v.

CAPTIVA CIVIC ASSOCIATION, INC. and WW SSIR OWNER, LLC,

Appellees.

_____

Appeal from the Circuit Court for Lee County.
James Shenko, Judge.

May 22, 2026

GANNAM, J.

Lee County appeals a summary judgment declaring that Captiva Civic Association can enforce a 2002 settlement agreement to permanently prohibit the County from issuing building permits for more than 912 dwelling units in the South Seas Resort District of Captiva Island. As interpreted by the Association and the trial court, the agreement is unenforceable as a matter of law. Thus, we reverse and remand for entry of judgment for the County.

I

The South Seas Resort District (SSRD) is a 304-acre zoning district at the northern end of Captiva Island in Lee County. The County created the district in a 1973 zoning resolution, on the application of the South Seas Resort developer. The resolution limited the district's development density to three dwelling units per acre. In 2002, the County issued an administrative interpretation finding that, of the 912 allowed units, thirty-five remained undeveloped.

An individual owner of property in SSRD and Captiva Civic Association, with a stated mission to "defend and preserve [Captiva Island's] comprehensive land use policy," sued the County and the developer to challenge the 2002 administrative interpretation. The parties settled in 2003 with a mediated settlement agreement providing, in relevant part: "The total number of dwelling units on South Seas Resort is limited to 912. No building permits may be issued by County for dwelling units within South Seas Resort that will cause that number to be exceeded at any time." The agreement also provided that the Association could enforce the agreement by application to the circuit court.

In 2023, the County adopted an ordinance amending the Lee County Development Code, which, in relevant part, excepted SSRD from the three-unit-per-acre density limitation. In 2024, the Association sued the County again, seeking a judgment declaring the 912-unit building permit limitation in the 2003 settlement

2

agreement permanent and enforceable against the County. The County moved for summary judgment on various grounds, including that a permanent 912-unit building permit limit is unenforceable against the County as an ultra vires contracting away of the exercise of the County's police power, and that the limit should be interpreted as conditional on then-existent zoning. The Association also moved for summary judgment. The trial court denied the County's motion and granted the Association's, and entered a final judgment declaring the 2003 settlement agreement enforceable by the Association against the County and that "no building permits may be issued by [the County] that will cause the number of dwelling units within the 304-acre property known as South Seas Resort to exceed 912 dwelling units at any time." The County timely appealed.

II

We review the trial court's summary judgment de novo. *See 16205 Captiva Drive, LLC v. Levinson*, 418 So. 3d 751, 754 (Fla. 6th DCA 2025). The County seeks reversal on two grounds: First, contrary to the trial court's interpretation, the 2003 settlement agreement limits building permits to 912 units for only so long as required by applicable zoning and does not restrict the County's power to legislate a different development density. Second, as interpreted by the trial court, the permanent 912-unit limit is unenforceable against the County as an ultra vires contracting away of the exercise of the County's police power. Because we agree with the second, we

3

need not address the first. Assuming the trial court's interpretation of the settlement agreement is correct, the permanent 912-unit building permit limit is an ultra vires provision that is unenforceable against the County as a matter of law.

### III

"The power, which in its various ramifications is known as the 'police power,' is an exercise of the sovereign right of the state to enact laws for the protection of the lives, health, morals, and comfort and general welfare of the people . . . ." *State ex rel. Mun. Bond & Inv. Co. v. Knott*, 154 So. 143, 145 (Fla. 1934). And, "[w]hile constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power . . . ." *City of Miami Beach v. Tex. Co.*, 194 So. 368, 375–76 (Fla. 1940). Thus, "[a]ll property rights are held and enjoyed subject to the fair exercise of the state's police power to establish regulations that are reasonably necessary to secure the general welfare of the state." *Dutton Phosphate Co. v. Priest*, 65 So. 282, 284 (Fla. 1914). A local government's imposition of zoning and permitting regulations on the use of private property are exercises of the police power delegated by the state. *See generally Hartnett v. Austin*, 93 So. 2d 86, 89 (Fla. 1956) (zoning); *Drexel v. City of Miami Beach*, 64 So. 2d 317, 319 (Fla. 1953) (permitting); *see also* Art. VIII, § 1, Fla. Const. (delegating self-government powers to counties); Art. VIII, § 2, Fla. Const. (delegating self-government powers to municipalities); § 125.01, Fla. Stat.

4

(delineating county government powers); § 166.021, Fla. Stat. (delineating municipal government powers).

It is a "long established principle" that a local government "cannot contract away the exercise of its police powers." *Hartnett*, 93 So. 3d at 89. Specifically, "[t]he adoption of an ordinance is the exercise of municipal legislative power. In the exercise of this governmental function a city cannot legislate by contract." *Id.* On this principle, the practice of "contract zoning [—] in essence, an agreement by a governmental body with a private landowner to rezone property for consideration [—] has long been disapproved in Florida." *Morgran Co., Inc. v. Orange Cnty.*, 818 So. 2d 640, 642 (Fla. 5th DCA 2002); *see id.* at 643 ("If the Board of County Commissioners has already contracted to 'support' Morgran's request for rezoning, it has invalidly contracted away its discretionary legislative power as the final decisionmaking authority."); *Chung v. Sarasota Cnty.*, 686 So. 2d 1358, 1360 (Fla. 2d DCA 1996) ("When it entered into the settlement agreement that obligated it to rezone Chung's property, the County contracted away the exercise of its police power, which constituted an ultra vires act."); *see also Zoning*, *Black's Law Dictionary* (12th ed. 2024) ("**contract zoning** (1960) **1.** Zoning according to an agreement, by which the landowner agrees to certain restrictions or conditions in exchange for more favorable zoning treatment. • This type of contract zoning is usu. considered an illegal abandonment of the government's police power, because by

5

private agreement, the government has committed itself to a particular type of zoning."); Roy P. Cookston & Burt Bruton, *Zoning Law*, 35 U. Miami L. Rev. 581, 589 n.34 (1981) ("Assuming that the developer and municipality bargain for a rezoning ordinance that is fairly debatable and nondiscriminatory, contract zoning is nevertheless illegal when they enter into a bilateral agreement involving reciprocal obligations. By binding itself to enact the requested ordinance (or not to amend the existing ordinance), the municipality bypasses the hearing phase of the legislative process.").

As interpreted by the trial court, the settlement agreement here may not meet the common definition of contract zoning because the Association is not a developer or landowner, but it violates the same principle that invalidates contract zoning. As interpreted, the agreement perpetually prohibits the County from issuing building permits beyond the historical 912-unit density limitation of SSRD, preempting the sovereign will of the County to legislate a higher density in the future by enacting new zoning or permitting ordinances. Such a settlement concession by the County was ultra vires, for it "contract[ed] away the exercise of its police powers." *Hartnett*, 93 So. 3d at 89; *see P.C.B. P'ship v. City of Largo*, 549 So. 2d 738, 741 (Fla. 2d DCA 1989) ("[T]he subject contract is ultra vires and therefore unenforceable. The agreement purports to restrict the City's ability to decide whether to build a road, install a traffic device and permit the development of a parking lot and a storm drain

connection. The City does not have the authority to enter into such a contract, which effectively contracts away the exercise of its police powers.").

To be sure, the Florida Local Government Development Agreement Act, §§ 163.3220–163.3243, Fla. Stat., first enacted in 1986, authorizes local governments to *temporarily* freeze zoning regulations by entering into "development agreements" with developers in aid of "promoting a stronger commitment to comprehensive facilities planning, insuring provision of adequate public facilities, reducing the economic cost of development, promoting certainty in the approval process, and combating escalation of housing costs and development." Robert M. Rhodes, *The Florida Local Government Development Agreement Act*, Fla. B.J., Oct. 1988, at 81; *see id.* at 82 ("The duration issue was debated and . . . agreed upon primarily to mute 'contracting away police powers' arguments."). But the settlement agreement here does not purport to be a statutorily authorized agreement between the County and a developer for the development of SSRD, and the Association disclaims the status of landowner or developer. Rather, the settlement agreement purports to resolve a dispute over the County's 2002 interpretation of the SSRD density limits in a 1973 zoning resolution by (as interpreted) perpetually binding the County to never permit the building of dwelling units beyond the then-agreed density limit.

IV

As interpreted by the trial court, the County's perpetual agreement not to permit building beyond the historical density limit in SSRD is an ultra vires contracting away of the exercise of the County's police power and unenforceable as a matter of law. We reverse the final declaratory judgment for the Association and remand for entry of final judgment for the County.

REVERSED and REMANDED with instructions.

NARDELLA and BROWNLEE, JJ., concur.

Chris W. Altenbernd, of Banker Lopez Gassler, P.A., Tampa, and Eleanor H. Sills, of Banker Lopez Gassler, P.A., Tallahassee, for Appellant.

Steven L. Brannock, Ceci Culpepper Berman, and Joseph T. Eagleton, of Brannock Berman & Seider, Tampa, and Theodore L. Tripp, Jr., and Gabriel Arbois, of Hahn Loeser Parks LLP, Fort Myers, and Michael R. Whitt, of Shutts & Bowen, LLP, Sarasota, for Appellee, Captiva Civic Association, Inc.

Hala Sandridge, of Buchanan Ingersoll & Rooney PC, Tampa, for Appellee, WW SSIR Owner, LLC.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED