HOBSON, Justice.
Appellant, the Panama City Airport Board, organized under Chapter 23465, Laws of Florida 1945, filed a petition in the circuit court seeking to condemn certain real property owned by defendant-appellees. The petition set forth that the land sought to be condemned was a tract 100 feet in width and 2,640 feet in depth, and that such area was to be used as an approach or clear zone area for the runway at Fannin Field. A motion to dismiss this petition was granted upon the sole ground that Chapter 23465, Laws of Florida 1945, does not, in its title, include a grant of power of eminent domain outside the city limits of the City of Panama City, as required by Article 3, Section 16, of the Florida Constitution, F.S.A.
The question raised on this appeal is whether or not the petitioner possesses the substantive right to maintain an action to condemn land outside the city limits of the City of Panama City and within 15 miles thereof.
In order to consider the question immediately involved, it is necessary to outline the statutory framework from which a municipality derives the power of eminent domain^or the purpose of creating or enlarging airport facilities. The general enabling act is Chapter 332, Florida Statutes, F.S.A., known as the “Airport Law .of 1945”, Chapter 22846, Laws of Florida 1945. Pertinent portions of this act, for our purposes, are the following:
“332.02 Acquisition of real property for airports
“(1) Every municipality is hereby authorised through its governing body, to acquire property, real or personal, for the purpose of establishing, constructing, and enlarging airports and other air navigation facilities and to acquire, establish, construct, enlarge, improve, maintain, equip, operate, and regulate such airports and other air navigation facilities and structures and other property incidental to their operation, either within or without the territorial limits of such municipality and within or without this state;
“(2) Property needed by a municipality for an airport or restricted landing area, or for the enlargement of either, or for other airport purposes, may be acquired by purchase, gift, devise, lease or other means if such municipality is able to agree with the owners of said property on the terms of such acquisition, and otherwise by condemnation in the manner provided by the law under which such municipality is authorized to acquire like property for public purposes, full power to exercise the right of eminent domain for such purposes being hereby granted every municipality both within and without its territorial limits, as specified in and including all the powers, rights, and privileges of chapters 73 and 74. If but one municipality is involved and the charter of such municipality prescribes a method of acquiring property by condemnation, proceedings shall be had pursuant to the provisions of such charter and may be followed as to property within or without its territorial limits. * * * ” (Emphasis supplied.)
“332.03 Same; establishment of airports, etc., declared public power
“The acquisition of any lands for the purpose of establishing airports or other air navigation facilities; the acquisition of airport protection privileges ; the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities, are hereby declared to be public, governmental and municipal functions, exercised for a public purpose, and matters of public necessity, and such lands and other property, *618 easements and privileges acquired and used by such municipalities in the manner and for the purposes enumerated in this chapter shall he and are hereby declared to be acquired and used for public, governmental and municipal purposes and as a matter of public necessity.”
It will be noted that these statutory sections provide a clear delegation of authority to acquire property by eminent domain both within and without the territorial limits of the municipality involved.
Referring to the Panama City Charter, we find the following provision:
“Sec. 10. That the said City is hereby delegated authority to exercise the right and power of eminent domain, that is the right to appropriate property within or without the territorial limits of said City, except State or Federal, for the following uses and purposes: * * * and other municipal purposes”. ' Chapter 11678, Laws of Florida 1925, Ex. Sess.
Reading the sections of Chapter 332, Florida Statutes, F.S.A., which we have quoted, with Section 10 of the City Charter, there can be no doubt, and we do not understand it to be contended otherwise, that the City itself possessed the power to take the property involved in this litigation by eminent domain for the purposes indicated in the petition. This brings us squarely to the question of whether or not petitioner acquired the same power. We are of the opinion that it did.
The title of the act which created the Panama City Airport Board, Chapter 23465, Laws of Florida 1945, reads in part as follows:
“An Act to Create a Board to be Known As the Panama City Air Port .Board; Declaring Said Corporation to be a Public Agency of the City of Panama City, Florida; to Provide for the Powers and Duties of Such Board; * * * to Provide for the Exercise of Such Powers, Including the Right to Acquire Property by Purchase, Lease, Eminent Domain, * * * to Grant the Power to Acquire, Construct, Maintain and operate Air Port Facilities, Warehouses, Hangers, Repair Facilities, Seaplane Bases, and All Other Facilities incident to the Operation of an Air Port * * *; to Declare Said Board to' Be an Agency of the City of Panama City, Florida; * * * to Define Further the Powers of Said Board Generally and In Respect to Leasing, Owning and Acquiring Real Estate * * *.”
Pertinent sections of the body of the act are the following:
“Section 1. There is hereby created a Board or Authority to be known as the Panama City Air Port Board with the usual corporate powers to sue and be sued and with the additional powers specified herein. Said Board or Authority shall be an agency of the City of Panama City, Florida, for the development of Air Port facilities. All property now owned or hereafter acquired by said Air Port Board or Authority shall be held by it for the benefit of said City but said Board of [sic] Authority shall not own or acquire any real estate except within the corporate limits of said City or within fifteen (15) miles of said City limits. [Emphasis supplied.]
* * * * * *
“Section 4. The Panama City Air Port Board or Authority, as hereby created is hereby authorized and empowered to own and acquire property by purchase, lease, eminent domain * *
At the outset it should be observed that there is nothing misleading in the title of this act. Although it does not specify that the Board is authorized to acquired property outside the city limits, it nowhere suggests that the Board will be restricted to the city limits in its exercise of the power *619 of eminent domain. Thus it is impossible, upon reading the title of the act, to reach any conclusion other than that the Board will possess those powers of eminent domain which the City has, territorially speaking, hut that it will be authorized to use these powers only in connection with the subject embraced in the title, to-wit: airport facilities. The mention of the territory in which the Board is authorized to acquire property, stated in Section 1 of the Act (i. e., within the city limits or fifteen miles thereof) is not a grant but a restriction of power, the power itself being granted in Section 4 of the Act and also stemming from the City Charter and those portions of Chapter 332, Florida Statutes, F.S. A., which we have reviewed above.
Of course, a legislative act and its title should not be considered in isolation and without reference to other statutes necessarily involved. In City of Ocoee v. Bowness, Fla., 65 So.2d 7, 9, a special act had established the new municipality of Ocoee and the title indicated that the act would “ ‘Provide for its Form of Government, Jurisdiction, Powers and Privileges.’ ” Appellees contended, and the trial court had held, that this title did not place ap-pellees on notice of the city’s power to annex contiguous lands, and that the city was without authority to resort to the provisions of the general law dealing with annexation of lands by a municipality. In reversing the judgment appealed from, we said in part:
“The appellees were on notice that the special act intended to confer certain jurisdiction, powers and privileges upon the municipality. If there existed any confusion about the meaning of the phrase ‘jurisdiction, powers and privileges’ we can think of no more appropriate place to look for an indication of what might reasonably be encompassed in the phrase so far as it might be applicable to the establishment and operation of a municipal government than in the general statutes pertaining to the subject of municipalities.
* * * * * *
“A wide latitude must of necessity be accorded the Legislature in its enactments of law. Before the courts will nullify statutes or portions thereof as not being within the purpose and scope of the ‘subject’ as expressed in the title, and of ‘matter properly connected therewith’, a plain case of violation of the organic law must be shown. Butler v. Perry, 67 Fla. 405, 66 So. 150, 152. And where by any reasonable in-tendment the title of an act is sufficiently broad to include within a statute any provision that may be fairly said to be properly connected with the ‘subject,’ such provision will not be declared inoperative. Howarth v. City of DeLand, 117 Fla. 692, 158 So. 294. It is only when the title is deceptive or misleading, as well as inartificial as an expression of the subject matter to be dealt with therein, that a provision of an act will be declared unconstitutional on account thereof. State ex rel. Municipal Bond & Investment Co. v. Knott, 114 Fla. 120, 154 So. 143.”
Insofar as the title of this act did not confer notice to the appellees of the territorial limitation of fifteen miles from the city limits, they cannot, of course, complain in any event, because it is not by the limitation but by the grant and use of the power that they profess to be injured.
Since, as we have seen, the title of the act in question could not have misled appellees into believing that the power of the Board would be restricted to the city limits, such cases as Christensen v. Commercial Fishermen’s Assn., 137 Fla. 248, 187 So. 699, 701, relied upon by them, are inapposite. In the Christensen case we had occasion to consider a statute, Sp.Acts 1937, c. 18676, whose title read ini part: “ ‘ “An Act Making It Unlawful for Any Person * * * to Fish * * * Any Haul Seine or Drag Net in Any of the Inside Salt Waters in Martin County, Flor *620 ida * * ’ ” Section 2 of the body of the act, however, made it unlawful to fish with a net “ ‘in either the inside or outside waters of Martin County.’ ” (Emphasis supplied.) We held that Section 2 was invalid under Article 3, Section 16, of the Florida Constitution. The title of the act was plainly misleading, and we so held, because the title stated the territory affected and the body of the act enlarged it. In the instant case, the title of the act makes no statement regarding the territory affected, and the restriction contained in the body of the act simply limits the territory which would otherwise be available under the general statutes and the City Charter.
It follows that the judgment appealed from must be, and it is hereby, reversed and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
DREW, C. J., THORNAL, J., and PEARSON, Associate Justice, concur.