Mr. Dudley P. Hardy County Attorney Board of County Commissioners Bradford County 996 N. Temple Avenue Post Office Drawer 1030 Starke, Florida 32091
Dear Mr. Hardy:
This is in response to your request for an opinion on substantially the following questions:
 (1) DOES THE CITY OF KEYSTONE HEIGHTS, WHICH IS LOCATED IN CLAY COUNTY, HAVE THE AUTHORITY UNDER s 332.08, F.S., TO ADOPT RULES, REGULATIONS, AND ORDINANCES OVER AIRPORT PROPERTY WHICH LIES IN BRADFORD COUNTY, FLORIDA?
 (2) DOES THE POLICE CHIEF OF KEYSTONE HEIGHTS HAVE THE AUTHORITY TO COME INTO BRADFORD COUNTY TO ENFORCE ORDINANCES WHICH MAY HAVE BEEN PASSED UNDER s 332.08(2)(a)?
Your inquiry notes that the City of Keystone Heights owns land in Bradford County on which a portion of the Keystone Heights Airport is situated, but that the city itself is located in Clay County. Thus, you question the authority of the city to adopt and enforce rules, regulations or ordinances governing this airport property or portion thereof located outside its home county. Since your questions are interrelated, they will be answered together.
Article VIII, s 2(c), State Const., provides:
 Municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities shall be as provided by general or special law. (e.s.)
As discussed in AGO 081-76, extraterritorial powers are not included within a municipality's home rule powers which are granted by Art. VIII, s 2(b), State Const., and implemented by s166.021, F.S. See also, s 166.021(3) (providing that municipalities have no home rule power to enact legislation concerning the subject of `exercise of extraterritorial power'). Rather, as specified in Art. VIII, s 2(c) which is set forth above, `exercise of extra-territorial powers . . . shall be as provided by general or special law.'
Chapter 322, the `Airport Law of 1945' expressly grants municipalities and counties, which are included in the definition of a `municipality' by s 332.01(1), F.S., substantial extraterritorial powers to establish and operate airports. See, Panama City Airport Board v. Laird, 90 So.2d 616 (Fla. 1956). Section 332.02(1) provides in pertinent part:
 Every municipality is hereby authorized through its governing body, to acquire property, real or personal, for the purpose of establishing, constructing, and enlarging airports and other air navigation facilities and to acquire, establish, construct, enlarge, improve, maintain, equip, operate, and regulate such airports and other air navigation facilities and structures and other property incidental to their operation, either within or without the territorial limits of such municipality and within or without this state; . . . . It may use for airport purposes any available property that is now or may at any time hereafter be owned or controlled by it. Such air navigation facilities as are established on airports shall be supplementary to and coordinated in design and operation with those established and operated by the federal and state governments. (e.s.)
Also, s 332.08(2)(a) expressly provides that a municipality which has established airports is authorized
 To adopt and amend all needful rules, regulations and ordinances for the management, government, and use of any properties under its control, whether within or without the territorial limits of the municipality; to appoint airport guards or police, with full police powers; to fix by ordinance or resolution, as may be appropriate, penalties for the violation of said rules, regulations and ordinances, and enforce said penalties in the same manner in which penalties prescribed by other rules, regulations and ordinances of the municipality are enforced. (e.s.)
Neither Art. VIII, s 2(c) nor the above statutes impose any geographical limits on the exercise of extraterritorial powers of municipalities to operate airports. Rather, s 332.02(1) expressly states that municipalities can acquire property for airport purposes `either within or without the territorial limits of such municipality and within or without this state.' (e.s.) Similarly, s 332.08(2)(a) simply provides that a municipality has power to adopt and enforce ordinances for its airport properties `whether within or without the territorial limits of the municipality.' Moreover, you have not brought to my attention nor am I aware of any special law which limits the scope or extent of extraterritorial powers of the City of Keystone Heights in this regard. Compare, Panama City Airport Board v. Laird, supra
(holding that a city airport board's power to condemn land extraterritorially was limited by special law to a zone within fifteen miles of the city limits). Accordingly, I am compelled to conclude that the City of Keystone Heights, which is located in Clay County, has the authority under s 332.08(2)(a) to adopt rules, regulations, and ordinances governing its airport property, including that portion thereof which lies in Bradford County.
You also ask if the police chief of Keystone Heights has the authority to come into Bradford County to enforce ordinances which may have been passed under s 332.08(2)(a). As set forth above, s332.08(2)(a) expressly authorizes a municipality which has established airports to adopt and enforce ordinances for its airport properties `whether within or without the territorial limits of the municipality.' Again, there is no geographical limitation placed on the enforcement of city ordinances governing airport properties by the above-referenced statutes. However, I must add that it is not the Police Chief of Keystone Heights, perse, that has the authority to go into Bradford County to enforce ordinances adopted pursuant to s 332.08(2)(a). Rather, it is the `airport guards or police' duly appointed under the statute that have that authority. In AGO 076-172, my predecessor in office concluded that the airport guards or police are the enforcing or police agency of the county within the territorial limits of the county airport, and that the statute bestows complete police orenforcement powers on such airport guards or police for the purposes of enforcing ordinances adopted under s 332.08, F.S. That opinion also noted that `the Legislature granted the whole of such police or enforcement powers to such airport guards or police . . . .' (e.s.) Accordingly, your second question is answered in the negative.
In summary, unless and until legislatively or judicially determined otherwise, it is my opinion that:
 (1) The City of Keystone Heights, which is located in Clay County, has the authority under s 332.08, F.S., to adopt rules, regulations, and ordinances governing its airport property which lies partially in Bradford County, Florida.
 (2) The duly appointed airport guards or airport police, not the Police Chief of Keystone Heights, have authority to enforce ordinances, which may have been passed under s 332.08(2)(a), within the bounds of the Keystone Heights Airport, including that portion thereof which lies in Bradford County.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General